[S. F. No. 849.    Department One.—March 8, 1899.]

NATHALIE G. HOCHSTEIN, Respondent, v. JOHN G. F. BERGHAUSER et al., Respondents.    THEO. BLANCK-ENBURG et al., Appellants.

REFORMATION OF DEED—MUTUAL MISTAKE—DEGREE OF PROOF.—A court is not authorized to reform a deed upon the ground of mistake, unless it is shown by clear and satisfactory evidence that there was a mutual mistake, and that, as written, it does not express the intention of both parties; and the evidence must be such as to leave no reasonable doubt in the mind of the court in what the mistake consisted, and what reformation should be made to express the intention of both parties.

ID.—QUESTION OF FACT—FINDINGS—SUFFICIENCY OF EVIDENCE.—The question whether the evidence is sufficient to establish the intention

of both parties contrary to the terms of the instrument, is one of fact to be determined by the trial court, and its decision upon the weight or conflict of the evidence is not open to review upon appeal. Where the court finds that there was no inadvertence or mistake on the part of either of the parties or of the scrivener, its findings cannot be disturbed upon appeal as not sustained by the evidence, if the appellate court cannot say from the evidence that its conclusion was incorrect.

ID.—HUSBAND AND WIFE—EXECUTORY AGREEMENT—LIFE ESTATE, WITH REMAINDER TO CHILDREN—DEED IN FEE SIMPLE—PRESUMPTION.—An executor's agreement between a husband and wife, pending an action for divorce, that the husband would convey a life estate to the wife, with remainder to the children, does not vest any interest in the children, nor prove a mistake in a subsequent deed from him to her in fee-simple. The parties could change the terms of the agreement so long as it was executory, or make such other disposition of the property as they might choose. It must be presumed that the deed, when executed, expressed the intention of the parties.

CONSTRUCTION OF DEED—LIMITATION TO "HEIRS" OF DECEASED CHILDREN. A limitation in a deed of part of a remainder to the "heirs" of deceased children, is to be construed as meaning persons who would succeed to their estate in case of intestacy, and as including the surviving husband of a deceased daughter.

APPEAL—FACTS NOT APPEARING.—Facts averred in an answer which do not appear in the findings or in the evidence in the record upon appeal must, for the purposes of the appeal, be regarded as nonexistent.

APPEAL from an interlocutory decree of the Superior Court of the City and County of San Francisco. A. A. Sanderson, Judge.

The facts are stated in the opinion of the court.

Otto Tum Suden, for Theo. Blanckenburg et al., Appellants.

George T. Wright, for Mathilde H. Vocke et al., Appellants.

W. S. Goodfellow, for Nathalie G. Hochstein, Respondent.

W. B. Bosley, for John G. F. Berghauser et al., Respondents.

W. W. Davidson, for John C. H. Jordan, Respondent.

Tobin & Tobin, for Hibernia Savings and Loan Society, Respondent.

Julius Reimer, for J. C. Baur, Respondent.

HARRISON, J.—Appeal from an interlocutory decree in partition. The property involved herein originally belonged to John Berghauser, who, by an instrument bearing date October 31, 1873, conveyed to his wife, Margarethe, an undivided third part thereof, with the exception of one parcel, to be hereinafter mentioned. At that date an action for divorce was pending between the parties, and an agreement was entered into between them providing that in case the court should render a judgment of divorce Berghauser should convey to his wife certain described property, including an undivided third of a portion of that involved herein. A judgment of divorce between them was rendered by the court, but no disposition or mention of property was made in the judgment, nor did the above deed of conveyance executed to Margarethe purport to be made in pursuance of the agreement or of the decree.

One parcel of the property, known as the "Prescott House," was within the district affected by the opening of Montgomery avenue, then in process of accomplishment, and it was provided by the agreement that Margarethe should be entitled to an undivided third of all moneys or bonds which might be received for damages awarded under the statute authorizing this improvement, and that "as soon as these moneys or bonds are received by defendant, plaintiff shall be entitled to her aforesaid share of the income or interest thereof, and as soon as said moneys or said bonds are invested in property by defendant, he shall forthwith convey to plaintiff by a good and sufficient deed, free and clear from all encumbrances, her aforesaid share of the property so obtained. It was further provided in the agreement that the deeds to Margarethe should convey to her only a life estate in the above property, with a remainder in fee to the six children of the plaintiff and defendant, share and share alike, and, in case of the death of any such children, then to their heir or heirs; and in the above deed executed to her the estate conveyed was limited and defined as follows: "To have and to hold the said lots of land with the improvement thereon unto the said party of the second part during her life, and upon her death to the children of said parties of the first and second part then living, share and share alike, and, in case of the death of any such children, then to their heir or heirs."

By the opening of Montgomery avenue a portion of this property was taken for the street, and the sum of fifty-four thousand dollars was awarded as damages therefor. Under a provision therefor in the aforesaid agreement, Berghauser mortgaged the "Prescott House" property for the sum of fifteen thousand dollars, and with this money, and a portion of the fifty-four thousand dollars received for the property taken for Montgomery avenue, he purchased a parcel of land fronting upon the avenue directly west of and adjoining the "Prescott House," and constructed thereon an addition to the old "Prescott House," and reconstructed the whole upon the line of the new street. After the completion of the improvement, viz., April 1, 1875, he executed to Margarethe a conveyance in fee simple absolute of an undivided third of the lot of land thus purchased by him.

John Berghauser died February 10, 1878, and Margarethe died December 9, 1893, leaving a last will and testament, and under proceedings had in the administration of her estate an undivided third of the property conveyed to her by the deed of April 1, 1875, was distributed to four of her six children, the other two having died in her lifetime.

1. It is alleged in the answer of certain of the defendants herein that the deed of April 1, 1875, did not correctly express the intention of the parties thereto, and that by inadvertence and a mistake of both parties, as well as of the scrivener, the deed as prepared and executed conveyed to Margarethe the fee in the property therein described, whereas it was the intention of both John and Margarethe that the deed should convey to her only a life estate with a remainder over to her six children and their heirs; and these defendants ask that the deed be reformed in accordance with this intention. The court, however, found that there was no inadvertence or mistake on the part of either of the parties to the deed, or of the scrivener, and that it was not the intention of said parties, or of either of them, that the said deed should vest in Margarethe a life estate only. This finding of the court is attacked by the appellants as not sustained by the evidence.

A court is not authorized to reform a written instrument upon the ground of mistake, unless it is shown by clear and satisfac-

tory evidence that the instrument as written does not express the intention of both of the parties thereto. Unless the mistake was mutual, or was accompanied by fraud, the parties are to be governed by the terms of the instrument as it is executed. (Pomeroy's Equity Jurisprudence, secs. 859, 1376.) "The party alleging the mistake must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. The mistake must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. A mistake on one side may be a ground for rescinding, but not for reforming, a contract. Where the minds of the parties have not met there is no contract, and hence none to be rectified." (*Hearne v. Marine Ins. Co.*, 20 Wall. 488.) The defendants were not entitled to have the instrument reformed as they had asked, unless they should show by satisfactory evidence that the conveyance was to be executed as they had alleged, and was so intended by both John and Margarethe at the time of its execution. The court could not make a new deed for the parties, nor could it reform the deed which was executed, in accordance with the claim of the defendants, unless it should be shown that the grantor intended to execute it according to those terms. (See *Ward v. Yorba, ante*, p. 447.)

Whether the evidence in any particular case is sufficient to establish such intention contrary to the terms of the instrument is a question of fact to be presented to and determined by the trial court, and, like any other question of fact, its decision upon the weight or conflict of the evidence thereon is not open to review in the appellate court. In the present case, the court expressly finds that the evidence is insufficient to show that there was a mistake on the part of either of the parties to the deed in its terms or conditions, and from the evidence presented in the bill of exceptions we are unable to say that its conclusion was incorrect. More than twenty years had elapsed since the transaction and the execution of the instrument. Both of the parties thereto had been dead for many years. The instrument was witnessed by one who had been the legal adviser of John Berghauser in the divorce suit and in the preparation

of the agreement for a conveyance of the property, and this witness had also been dead for many years. Margarethe, the grantee in the deed, was absent from the state at the time of its execution, and did not return until after the death of John, the grantor. The deed was executed at the request of her agent, and was delivered to him and by him placed upon record and sent to her in Virginia. This agent was a witness at the trial, and was unable to remember the exact conversation between him and John Berghauser when the deed was executed.

It is further contended by the appellants that they were entitled to the relief they seek, irrespective of the reformation of the deed, by virtue of the provision in the agreement that the deed should convey to Margarethe only a life estate with a remainder over to the children of the parties. The agreement of October 31, 1873, was, however, only executory in its character, and, so long as it remained executory, the parties thereto could change its terms or rescind its provisions, or make such disposition of its subject matter as they might choose. (Civ. Code, sec. 1698.) The children had no interest in the property referred to in the agreement, nor could they enforce its execution. It was entered into without any consideration moving from them, and, so far as appears, without their knowledge. They were not parties thereto, but were only beneficiaries contemplated by their parents as persons upon whom they would bestow their bounty. There was no obligation upon John and Margarethe to adhere to the terms of this agreement, and when on April 1, 1875, he made a conveyance to her in fee of an undivided third of the property, it must be assumed, in the absence of any evidence to the contrary, that this was his intention, and as she accepted the deed and retained it until her death, with full opportunity to know its contents and purport, and made no objection thereto, it may be assumed that she was satisfied therewith.

2. The deed to Margarethe of October 31, 1873, provided that upon her death the property should go to the children then living share and share alike, "and in the case of the death of any such children, then to their heir or heirs." Two of the daughters died in the lifetime of their mother, each leaving a husband and issue. The court below excluded the husbands

of these daughters from any share of the property. It is claimed by the appellants that these husbands are entitled to a portion of the estate thus given to the "heirs" of the deceased daughters, while on the other hand it is contended that the term "heirs," as used in the deed, is limited to the "children" of the daughters.

The "heirs" of a person are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will. In this state the heirs of a person to whom, under section 1384 of the Civil Code, his estate passes when not disposed of by will, are determined by the provisions of section 1386 of the Civil Code, and the use of the term "heirs" in an instrument of conveyance to designate the persons in whom the estate granted is to vest will, in the absence of any qualifying terms, be construed to mean his heirs as thus ascertained. "Like all other legal terms the words 'heirs,' when unexplained and uncontrolled by the context, is to be construed according to its strict technical import, in which sense it designates the persons who would by the statute succeed to the real estate in case of intestacy." (*Clarke v. Cordis,* 4 Allen, 466.) "If there are no words in a deed to indicate that a grantor uses the word 'heirs' any other wise than its strict legal sense, then it must be taken in that sense." (Jones on Conveyancing, sec. 232.) Many cases have been cited in support of the judgment of the superior court in which it has been held that the term "heirs" was construed as synonymous with "children," but an examination of these cases will show that this construction was given by reason of some qualifying word or some other provision in the instrument by which it could be interpreted or explained. The object of all construction of an instrument is to ascertain the intention of the parties thereto, and thus determine the meaning to be given to the terms; and, if the instrument contains a glossary of its own terms, or if a term used in one part of the instrument can be interpreted by its use in another part, courts will avail themselves of this means of ascertaining the meaning of the term. The intention is to be gathered from a consideration of the entire instrument, but, in the absence of any qualifying term or language in the instrument itself, the words used are to receive their legal significance. In the con-

veyance of October 31, 1873, there is no language used which in any respect qualifies the direction that in the event of the children dying before their mother their share of the property should go to their heirs, or indicating that the term "heirs" was used in any qualified or limited sense, and it must be held that the word was used to describe the persons who on the death of the mother would have succeeded to her estate in case of her dying intestate. Under the provisions of section 1386 of the Civil Code, the husband would have been one of these persons (*In re Dobbel*, 104 Cal. 432, 43 Am. St. Rep. 123), and the court should, therefore, have decided that he was entitled to a portion of the estate.

3. The appellants Vocke urge that the action was prematurely brought, for the reason that by the terms of the will of John Berghauser it was provided that the property devised by him to the trustees therein named should be conveyed to his children when the youngest of them should arrive at the age of twenty-one years, and should be held by such children, or the survivor of them, until the youngest should attain the age of thirty years; that in pursuance of this provision the trustees conveyed the land to said children on the tenth day of February, 1891, with the condition that the property should be held in common by them until the seventh day of March, 1898—that being the date at which the youngest child would arrive at the age of thirty years. The answer of these appellants contains averments to this effect, but neither in the findings of the court, nor in the bill of exceptions is there any fact or evidence in support of these averments, and for the purposes of this appeal the facts thus averred must be regarded as nonexistent.

The order appealed from is reversed, and the superior court is directed to modify the interlocutory decree in accordance with the foregoing opinion. One-half of the costs of the appeal is to be borne by the respondent John C. Jordan, and the other half, together with the costs of the plaintiff, by the appellants.

Garoutte, J., and Van Dyke, J., concurred.

Hearing in bank denied.