[Civ. No. 7459. Third Dist. June 8, 1948.]

ROY A. McCLURE, Appellant, v. C. M. CERATI, Respondent.

John L. Brannely and E. R. Vaughn for Appellant.

Downey, Brand, Seymour & Rohwer for Respondent.

THOMPSON, J.—A general and special demurrer to plaintiff's second amended complaint was sustained with leave to amend the pleading within 10 days. The plaintiff elected to stand on his pleading and failed to amend it. Judgment of dismissal of the action was accordingly rendered. From that judgment the plaintiff has appealed.

This is a suit for reformation, under section 3399 of the Civil Code, of a written contract of employment, to include therein an alleged oral agreement previously made in the negotiations therefor to pay plaintiff, in addition to his stipulated salary of $6,000 a year, a further sum of $6,000 and 25 per cent of the net profits of the business, in the event that plaintiff should be discharged before the expiration of the agreed one-year term of employment. The plaintiff was discharged prior to the expiration of the one-year term. The complaint also asks for an accounting to determine plaintiff's share of the net income and for judgment for $796.80, the unpaid portion of the specified yearly salary, plus the additional sum of $6,000 and 25 per cent of the net income pursuant to the terms of the alleged *oral* agreement. A general and special demurrer to the complaint was sustained. The plaintiff having failed to amend his complaint within the time allowed, upon motion of the defendant a judgment of dismissal of the action was rendered.

The complaint for reformation does not allege fraud. But it does attempt to allege, pursuant to section 3399 of the Civil Code, that, on account of mutual mistake of the parties, or by the mistake of plaintiff which the defendant then knew, or should have suspected, the written instrument does not "truly express the intention of the parties." The complaint affirmatively alleges that *"plaintiff and defendant* drafted and prepared" the written agreement, which they "signed and executed" on June 4, 1945. The written contract is attached to the complaint, marked "Exhibit A" and made a part thereof. It reads as follows:

"EXHIBIT A"

"BUTANE ENGINEERING CO.

A. M. Cerati

Davis Highway                                        Phone 2-0716

AGREEMENT BETWEEN

C. M. Cerati — Employer

and

R. A. McClure — Employee

"Employer agrees to hire employee for a period of one year beginning July 1, 1945 for the sum of six thousand dollars payable at the rate of five hundred dollars per month. Employer agrees, also, to pay employee twenty-five per cent of the net profits of the Butane Engineering Co. for the calendar year above stated; provided employee is still on the job by and end of such calendar year. The profits to be confined to the operations of the Butane Engineering Co. and not to include profits of the sale of capital assets nor profits of C. M. Cerati personally, if any. Such profits to be determined in the same general manner as heretofore by C. M. Cerati, as evidenced by company prepared statement or income tax records, and he to be the sole judge in determining such profits.

"Employee agrees to faithfully, loyally and efficiently work exclusively for the Butane Engineering Co. and, in case he should quit, he shall be entitled to a wage of five hundred dollars per month plus one fourth of the earned salary from July 1, 1945 to the date of his resignation. He would forfeit the balance of the six thousand dollars annual wage also he would forfeit the twenty-five percent of the profits for the year.

"If the employer should, during the year above referred to, discharge the employee, then he shall pay the full six thousand dollars in full settlement of what is due to the employee; and in case of such discharge, with or without cause, prior to the end of such year, the employee shall have no right to any share in the accrued profits.

(signed)    C. M. Cerati
C. M. Cerati — Employer
(signed)    Roy A. McClure
R. A. McClure — Employee

June 4, 1945''

The complaint is couched in three counts.   The first cause alleges that the defendant was engaged in merchandising liquid petroleum products in Yolo County, under the fictitious name of Butane Engineering Company; that, on June 4, 1945, the parties negotiated for plaintiff's employment in said business for one year commencing July 1, 1945, upon specified terms and at a stipulated salary; that as a result of said conversations and negotiations it was *orally agreed* defendant would pay plaintiff a salary of $6,000, at the rate of $500 per month for the year's employment, and, in the event the plaintiff was discharged during that year, defendant would pay to him the additional sum of $6,000; that ''plaintiff would not have entered into said contract of employment if the defendant had not agreed to pay plaintiff said sum of $6,000.00 in addition to plaintiff's salary.''   It is further alleged that *"plaintiff and defendant inserted in said written agreement''* (italics added), the last paragraph of the previously quoted contract; ''that said paragraph is ambiguous'' because it cannot be ascertained therefrom whether the reference to payment of the ''full six thousand dollars'' in the event of a discharge of plaintiff included not only the specified salary of $6,000, but also the alleged additional similar sum mentioned in the oral agreement.   It is alleged that the ''ambiguous paragraph'' of the written contract ''was caused through the *mutual mistake* of plaintiff and defendant, in believing that said contract contained unambiguous provisions'' covering the requirement to pay both sums of $6,000, in the event of the discharge of plaintiff.   It is alleged that the term of employment ''was orally modified'' to commence July 26, 1945, instead of July 1st of that year; that plaintiff began working on July 26th, and faithfully performed all of his duties until June 8, 1946, at which time he was discharged, when, for the first time, he

learned that defendant construed the contract to authorize him to discharge plaintiff without cause, and without paying him the full *additional sum* of $6,000, besides his stipulated salary. Finally, it is alleged plaintiff was paid his entire salary of $500 per month for the time which he served, except the sum of $796, which last-mentioned sum was tendered to him by check as full compensation, but which was refused for the reason that plaintiff claimed there was due him, under the oral agreement, the additional sum of $6,000 and 25 per cent of the net profits of the business for that year.

The first count contains no other allegation of facts asserted to have resulted in the mistake contained in the written contract. The first count is based solely on the theory of a *mutual mistake*, and not upon an alleged mistake of plaintiff which was known to or suspected by the defendant. In paragraph V of that cause, plaintiff alleges that the omission in the written contract of the oral agreement occurred "through the mutual mistake of plaintiff and defendant."

The second cause refers to and incorporates therein all of the material allegations of the first cause of action. The second count further alleges that the acceptance of the written contract "was due to defendant's assurance to plaintiff that said written contract conformed in every respect to the terms, conditions and provisions of said oral agreement"; that defendant knew or suspected, or had reason to know or suspect that when said written contract was signed "plaintiff was of the belief that the terms and conditions of said written contract were the same as those of said oral agreement and was without knowledge of the ambiguity in said written contract"; that the "said written contract is illegal, void, false and erroneous." No other facts or reason for such alleged mistake, knowledge on the part of defendant or illegality of contract are alleged.

The third cause of action is apparently based on an asserted estoppel precluding the defendant from denying that the alleged oral agreement is in conflict with the provisions of the written contract. The only alleged grounds for estoppel are, in effect, that defendant and plaintiff were close friends and that defendant knew plaintiff had been employed by the B. F. Goodrich Company for several years at a salary of about $6,000 per year, with which company he had acquired "valuable rights" on account of his long service; that the defendant nevertheless persuaded plaintiff to resign his employment

with the Goodrich Company, and to accept employment with him, on or about May 10, 1945, after a "trial period" of two weeks' service, for a period of one year pursuant to the terms of a written contract; that the plaintiff did resign and that he fully performed all the conditions of their agreement; that the "terms, conditions and provisions [of the alleged oral agreement], and each and all of them, plaintiff was led by defendant to believe were incorporated, without ambiguity, into said subsequent written contract"; that during all of the time to June 8, 1946 "defendant's acts and conduct . . . were calculated to, and did, lead plaintiff to believe that defendant was acting under the belief that the conditions and provisions of said written contract in every way conformed to . . . the oral agreement"; that the plaintiff is informed and believes that the net profits of defendant's business during said year exceeded the sum of $60,000, 25 per cent of which belong to plaintiff under said oral agreement; that the defendant nevertheless discharged plaintiff on June 8, 1946, without cause, and that defendant should therefore be estopped from denying that the written contract of employment is in conflict with the said alleged terms of the oral agreement.

The plaintiff seeks to reform the written contract, which is absolutely conflicting with the alleged oral agreement, on the theory that the written contract is ambiguous.

It is our opinion the written contract of employment is not ambiguous or uncertain in its terms. The first sentence of the first paragraph is a clear agreement to employ plaintiff for one year beginning July 1, 1945, at a yearly salary of $6,000, to be paid at the rate of $500 per month. The second sentence of the first paragraph provides that the plaintiff shall also receive as compensation "for the calendar year above stated," 25 per cent of the net proceeds of the business, *"provided employee is still on the job by and end of such calendar year."* The second paragraph of the contract provides that "in case he [the employee] *should quit,* he shall be entitled to a wage of five hundred dollars per month plus one fourth of the earned salary from July 1, 1945 *to the date of his resignation."* But the second paragraph is not material in this case, because the employee did not *quit.* He was discharged. The third and last paragraph of the contract seems clear and explicit. It provides that "If the employer should, during the year above referred to, discharge the em-

ployee, then he shall pay the full six thousand dollars *in full settlement of what is due to the employee*; and in case of such discharge, *with or without cause,* prior to the end of such year, *the employee shall have no right to any share in the accrued profits."* (Italics added.)

It will be observed that the reformation sought by the complaint amounts to an entire substitution of the alleged oral agreement for the material provisions of the written contract, because the two contracts are in absolute conflict. They are irreconcilable. Clearly the last paragraph of the written contract authorizes the defendant to discharge the plaintiff at any time "with or without cause." In that event the plaintiff is entitled to "the full six thousand dollars in full settlement" of the salary due to him, and the plaintiff shall then "have no right to any share in the accrued profits."

■ No valid cause of action based on the oral agreement, as distinguished from the subsequent executed written contract, was alleged because the services were not to be performed within one year *from the making thereof,* and it was therefore within the statute of frauds and void. (Civ. Code, § 1624.)

■ Under the allegations of the complaint the plaintiff must have been presumed to have had full knowledge of the clear, expressed provisions of the written contract. He alleges it was "drafted and prepared" by both the plaintiff and the defendant. The plaintiff signed and executed the written contract. He must be presumed to have read and understood its provisions. We may assume he had a copy of the instrument. He accepted the employment, received the benefits of the contract and performed his duties in accordance with its provisions for nearly one year. He was paid or tendered the full amount of his specified salary for the full term of one year. ■ It is alleged that the asserted oral agreement was made during "certain conversations and negotiations" for the written contract which was immediately prepared and executed by the plaintiff and defendant. The written contract, in the absence of fraud, therefore superseded all such previous negotiations or stipulations. (Civ. Code, § 1625; *Alameda County Title Ins. Co.* v. *Panella,* 218 Cal. 510 [24 P.2d 163]; *Estate of Gaines,* 15 Cal.2d 255, 264 [100 P.2d 1055].) Since the alleged oral agreement is in absolute conflict with the written contract, and it was not to be performed within one year *from the making there-*

*of*, it came within the statute of frauds and was therefore void. (Civ. Code, § 1624, subd. 1; Code Civ. Proc., § 1973, subd. 1; *Wickson* v. *Monarch Cycle Mfg. Co.*, 128 Cal. 156, [60 P. 764, 79 Am.St.Rep. 36]; *Kraft* v. *Rooke*, 103 Cal.App. 552 [284 P. 935].)

Since the general and special demurrer was sustained with 10 days granted plaintiff in which to amend, and he refused to amend, we must resolve all doubts as to the suf-ficiency of the pleading against him, and assume that he stated his case as fully and strongly as the facts would war-rant. (*Curci* v. *Palo Verde Irr. Dist.*, 69 Cal.App.2d 583, 585 [159 P.2d 674]; *Royal Ins. Co.* v. *Mazzei*, 50 Cal.App.2d 549, 555 [123 P.2d 586]; *Frace* v. *Long Beach City High School Dist.*, 58 Cal.App.2d 566, 568 [137 P.2d 60].)

The only issue in the first count of the complaint is whether there are sufficient allegations to support a cause founded on *mutual mistake* of both parties, as we have pre-viously stated. We are of the opinion the allegations of the first count are inadequate as against the demurrer, to state a cause founded on mutual mistake. It merely states that the omission of the alleged oral agreement caused the parties to believe that the written contract was unambiguous. That is a mere conclusion. No reason for the omission of the alleged oral agreement is stated. It is not even stated that it occurred through fraud, oversight, error of the scrivener, or how or why it was omitted. In fact, those contingencies are refuted by the allegations of the complaint because it is affirmatively stated the written contract was "drafted and prepared" by both parties. Moreover, the written contract is attached to the complaint as an exhibit. It is not am-biguous. Its terms are clear and unambiguous. It says nothing regarding the payment of *an additional sum* of $6,000 in the event the plaintiff should be discharged. It would be highly unreasonable to hire an employee, with the right to discharge him with or without cause, at any time during his employment, and, in the event of his discharge for unfit-ness or other good cause, to become bound to pay him his entire stipulated salary, together with an additional sum of $6,000, and 25 per cent of the net profits of the business. The written contract refutes that construction. The ac-ceptance of the alleged oral agreement would amount to a substitution for the essential provisions of the written con-tract. The two instruments would be absolutely conflicting.

The material allegations of the complaint are mere conclusions. There are no allegations of fact showing how or why such a glaring and improbable mistake could have occurred.

In a suit for reformation of a contract for mutual mistake, in the absence of a clear recitation of facts showing how, when and why the mistake occurred, the pleading is inadequate as against a general and special demurrer. (*Auerbach* v. *Healy*, 174 Cal. 60, 63 [161 P. 1157]; *National Bank of Calif.* v. *Exchange National Bank*, 186 Cal. 172, 181 [199 P. 1]; *Wright* v. *Shafter*, 48 Cal. 275, 276; *Hochstein* v. *Berghauser*, 123 Cal. 681, 685 [56 P. 547]; *Knerr* v. *Baruch Corp.*, 47 Cal.App.2d 601, 603 [118 P.2d 488]; 22 Cal.Jur. § 18, p. 732; 53 C.J. § 175, p 1016; 45 Am.Jur. § 100, p. 644; 23 R.C.L. § 58, p. 361.) In the Auerbach case, *supra*, at page 62, the court said:

"The rules of pleading in actions for the reformation of contracts are well established, and should be familiar. The complaint should allege 'what the real agreement was, what the agreement as reduced to writing was, and where the writing fails to embody the real agreement.' . . . It is necessary to aver facts showing *how the mistake was made, whose mistake it was, and what brought it about, so that the mutuality may appear.*" (Italics added.)

In *Robertson* v. *Melville*, 60 Cal.App. 354, at page 358 [212 P. 723], it is said that:

". . . *It is the facts, and not the pleader's conclusions, from which the chancellor is to draw the conclusion that there was a mistake in which both parties participated. . . .*" (Italics added.)

In the Wright case, *supra*, it is said:

". . . It is well settled that a complaint claiming relief on the ground of mistake must not only distinctly aver the fact of the mistake, *but also set forth the circumstances under which it occurred* in so far as those circumstances may be necessary to present a case within the rule of equity upon which relief is granted. Tested by this rule, the complaint here is radically defective, and *the demurrer should have been sustained.*" (Italics added.)

In 22 California Jurisprudence, at page 733, which text is supported by numerous authorities, it is said:

" . . . [I]f mutual mistake is the gravamen of the action, facts should be alleged showing how it was made and what brought it about, so that its mutuality may appear."

The other texts, previously cited, adhere to the foregoing uniform rule of pleading.

When a plaintiff, in a suit to reform a contract for mutual mistake, affirmatively alleges facts from which it appears that he was guilty of gross negligence or failure to perform a legal duty with relation thereto, the complaint is inadequate to entitle him to equitable relief. Section 1577 of the Civil Code provides for relief from mistake only, when the mistake is ''not caused by the neglect of a legal duty on the part of the person making the mistake.'' (See *Hawkins* v. *Hawkins*, 50 Cal. 558.)

We conclude that the first cause of action, as against the general and special demurrer, fails to state facts sufficient to entitle the plaintiff to reformation of the written contract on the ground of mutual mistake, and that the court therefore properly sustained the demurrer to that count.

The second cause of action is also inadequately stated for the same reasons previously assigned with respect to the first count. The second cause refers to and adopts the material allegations of the first count, as a part thereof. The second cause is founded on the asserted omission from the written contract of the alleged oral agreement, which omission was known or suspected by the defendant. The complaint merely alleges that plaintiff's mistake in that regard ''was due to defendant's assurance to plaintiff that said written contract conformed in every respect to the terms, conditions and provisions of said oral agreement.'' That statement was specifically demurred to for uncertainty. It is not alleged when, or how, or by means of what language or conduct of the defendant, he *assured plaintiff* that the written contract, which was prepared by both of them, contained the identical provisions of the inconsistent oral agreement. Indeed, it is not alleged when or how the oral agreement was mentioned or discussed in connection with the written contract, or what was said in that regard. The preceding quoted allegation is a pure conclusion of the pleader. There are no facts alleged in that count from which the court may determine that the defendant suspected or knew that plaintiff believed the terms of the alleged oral agreement were the same as those of the written contract, which latter contract is concise, clear and unambiguous. It is in direct conflict with the alleged oral agreement. The plaintiff, having helped to prepare the written contract and having signed it with-

out objection, should be charged with knowledge of its contents. (*Hawkins* v. *Hawkins, supra.*) We perceive of no reason, and certainly none is specifically alleged, why the defendant should have known, or suspected that plaintiff believed the inconsistent provisions of the alleged oral agreement were included in the written contract.

Moreover, the third paragraph of the second count of the complaint alleges that the written contract is "illegal, void, false and erroneous." In *Ainsworth* v. *Morrill,* 31 Cal.App. 509 [160 P. 1089], the court said, at page 511: "It is elementary that a void agreement has no standing in the law, and consequently it can neither be reformed nor enforced."

The demurrer to the second count was therefore properly sustained.

The third cause is likewise inadequate. It also refers to and adopts the allegations of the former counts as a part thereof. It is based on an alleged equitable estoppel, precluding the defendant from denying that plaintiff is not entitled to his entire yearly salary of $6,000, plus an additional similar sum of $6,000 and 25 per cent of the net profits of business for that year, or that plaintiff was properly discharged, because the defendant induced him to give up his position with the B. F. Goodrich Company at a salary of $6,000, and to accept employment with the defendant, to plaintiff's detriment. On page 11 of plaintiff's brief he thus states his position in that regard:

"Where the defendant by his words or conduct represents that he proposes to stand by the oral contract, and the plaintiff, *in reliance thereon,* changes his position, the defendant will be estopped to set up the bar of the statute."

The complaint does not allege when plaintiff resigned his position with the Goodrich Company. It merely alleges that, on May 10, 1945, the parties "entered into certain conversations and negotiations that resulted in plaintiff's resignation from the B. F. Goodrich Company and the execution of a contract for the employment of plaintiff in defendant's business."

There is no allegation that plaintiff resigned his former employment or changed his position to his detriment *in reliance upon said negotiations* or what was said or done by the defendant to induce plaintiff to accept employment with the defendant. It is argued, in effect, that the change of posi-

tion was induced by *fraud or deceit* on the part of the defendant. But the allegations of the cause of such change of position are mere conclusions. It is not alleged that any statements which the defendant may have made were uttered *with the intention of deceiving* plaintiff to his detriment, or that plaintiff *relied* on such statements, the nature of which is not disclosed. The third cause is defective in that regard.

The rule is well established that the pleading must allege that the complainant *relied* upon asserted misrepresentations or fraudulent statements which induced a change of plaintiff's situation to his detriment, in order to state a cause of action which will afford equitable relief on that account, as against a demurrer to the pleading. (*Estep* v. *Armstrong*, 69 Cal. 536 [11 P. 132]; *Neff* v. *Engler*, 205 Cal. 484, 488 [271 P. 744]; *Maxon-Nowlin Co.* v. *Norswing*, 166 Cal. 509, 511 [137 P. 240]; *Burke* v. *Maguire*, 154 Cal. 456, 467 [98 P. 21]; 12 Cal.Jur. § 64, p. 806; 3 Bancroft's Code Pleading § 1463, p. 2382; 23 Am.Jur. § 141, p. 939; 24 Am.Jur. § 248, p. 79; 37 C.J.S. § 86, p. 384.) In the Burke case, *supra,* in which the order sustaining a demurrer to the complaint on similar grounds was affirmed on appeal, it is said at page 467:

"It is not stated that plaintiffs believed the alleged false representations . . . nor that it was in reliance thereon [that the change of situation to appellant's detriment occurred]. It is the general rule that one who claims that his conduct has been influenced to his prejudice by alleged false statements of another, must allege that *he believed the false statements to be true and relied on them* in his subsequent action relating to the subject thereof. [Citing authorities.]"

In 12 California Jurisprudence, at page 806, section 64, each statement of the text being supported by California decisions, it is said:

"The pleadings must, of course, show the fraudulent representations; that they were known by the defendant to be false or were made under circumstances not warranted by his knowledge; that they were actually false; that they were made with intent to deceive the plaintiff, or with intent to induce him to enter into the transaction; *that the plaintiff relied upon the representations,* believing them to be true; and that he was injured."

Tested by the foregoing rule of pleading, the third count in this case is defective in failing to allege that plaintiff relied on asserted misrepresentations of the defendant, and in other respects.

In 37 Corpus Juris Secundum, 383, section 85, it is said that:

"It is necessary to aver that the pleader was ignorant of the falsity of the representations set out, that he believed them to be true, and that he had a right to rely thereon."

The pleading in this case contains no such allegations. The gist of the alleged misrepresentation is that the defendant *assured plaintiff* that the written contract contained the oral agreements with respect to his compensation in the event of his discharge. But it affirmatively appears from the pleading that plaintiff could not have been ignorant of the provisions of the written contract because he joined in the preparation of that document and signed it. We must assume that he read and fully understood that contract. Under such circumstances he had no right to rely upon statements in direct conflict with the clear provisions of the written contract. (*Robbins* v. *Law,* 48 Cal.App. 555, 562 [192 P. 118]; *Wright* v. *Redwood Theatres, Inc.,* 49 Cal.App.2d 403 [121 P.2d 756].)

The demurrer to the third count of the complaint was therefore properly sustained. The plaintiff was given time within which to amend his pleading, but failed and refused to do so. Plaintiff filed no closing brief in this case.

The judgment of dismissal of the action, which was accordingly rendered, is affirmed.

Adams, P. J., and Peek, J., concurred.