[Civ. No. 8575.   Third Dist.   Mar. 29, 1955.]

C. RAY MURRY et al., Respondents, v. E. R. LOVELL et al., Appellants.

Manwell & Manwell for Appellants.

Hewitt & McBride for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment against defendants which enjoined them as the owners of a lot in a subdivision from violating certain use restrictions which the trial court found to be binding upon them as owners of such lot. The suit was brought by the owners of the adjacent lot. Both plaintiffs and defendants claimed under a common grantor. The restrictions declared and enforced stated as to all lots in the subdivision, that: "No noxious or offensive trade or activity, shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood." The history of the title is this: Glenn F. Michael and wife owned a parcel of land. They subdivided the land, prepared a map of the subdivision and recorded the map. At the same time they recorded a document which described the entire parcel, declared the Michaels to be the owners thereof, and further stated that as such owners they were by the document declaring and establishing restrictions upon the property and each part thereof. The document contained a list of use restric-

tions, including those quoted above. It stated that the tract should be known as a residential tract, it prescribed limitations upon the type of residences that could be built, and upon the location of such residences upon the lots with respect to front and side lines; it prescribed other restrictions not necessary here to delineate. It appears that the owners had in mind a uniform plan of restrictions which they intended to impose upon each and every lot in their subdivision. After purchasing their lot the defendants began conducting thereon, and upon another parcel which they owned and which was outside the subdivision, the business of trucking; and mainly it was the noise emanating from the operation of the trucks that constituted the basis for the court's finding that defendants were violating the restriction quoted above against carrying on any noxious or offensive trade or activitiy.

Glenn Michael was a witness at the trial. He testified without objection that when he executed deeds to plaintiff and defendant he told each of them about the restrictions and read to them a copy of the recorded declaration.

It appears, however, that neither deed contained any reference to restrictions, and it does not appear from the evidence that any deed executed by Michael and his wife contained any such reference. Plaintiffs appear to have relied upon the recording of the declarative instrument and the subdivision map and upon the information given orally by Glenn Michael at the time the deeds were made, as sufficient proof to establish the existence of the servitudes. We think the proof wholly insufficient.

Although appellants in their briefs advance a number of reasons why, in their view, the judgment must be reversed, we think it unnecessary to discuss any of these save the contention that the servitudes relied upon were never created, with respect either to their lot or that of the respondents. This contention must be sustained. ■ The leading case upon the subject is that of *Werner* v. *Graham*, 181 Cal. 174, 183-185 [183 P. 945]. Therein the court declared:

"It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. . . . ■ In such a case the mutual servitudes spring into existence as between the *first parcel conveyed and*

*the balance of the parcels at the time of the first conveyance.*
As each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding conveyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still retained by the original owner. . . .

''The difference between such a case and the one at bar is that here there is no language in the instruments between the parties, that is, the deeds, which refers to a common plan of restrictions or which expresses or in any way indicates any agreement between grantor and grantee that the lot conveyed is taken subject to any such plan. Is this difference material? This is the crux of the present case. It has been held that this difference is not material. There are decisions to the effect that when it appears that the owner of a subdivided tract has sold various lots in it from time to time and in each conveyance has exacted restrictive covenants which, it is evident, when all the deeds are considered together, were exacted in accord with a common plan, it is enough, and that mutual equitable servitudes have been created, although in any single deed taken by itself there is nothing to indicate any intent to create such reciprocal rights. . . .

''There is likewise authority to the contrary. . . .

''An analysis of such a case, however, leaves, we believe, no reasonable doubt as to which line of authorities is correct. The intent of the common grantor—the original owner—is clear enough. He had a general plan of restrictions in mind. But it is not his intent that governs. It is the joint intent of himself and his grantees, and as between him and each of his grantees the instrument or instruments between them, in this case the deed, constitute the final and exclusive memorial of such intent. . . . Nor does it make any difference that, as claimed by the defendants, Marshall gave each grantee to understand, and each grantee did understand, that the restrictions were exacted as part of a general scheme. Such understanding was not incorporated in the deeds, and as we have said, the deeds in this case constitute the final and exclusive memorials of the understandings between the parties. *Any understanding not incorporated in them is wholly immaterial in the absence of a reformation. . . . This whole discussion may in fact be summed up in the simple statement that if the parties desire to create mutual rights in real property of*

*the character of those claimed here they must say so, and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them which constitute the final expression of their understanding."* (Italics added.)

The rules declared in *Werner* v. *Graham* governing the creation of equitable servitudes have not as to the subject here under discussion been changed since that opinion was rendered. Like rules govern in most of the states. As an example, we refer to *Gardner* v. *Maffitt*, 335 Mo. 959 [74 S.W.2d 604, 95 A.L.R. 452]. In that case an owner of a tract of land had subdivided it and had recorded a plat of the subdivision. Concerning the creation of equitable servitudes the court said:

"Easements and restrictions on real estate can be created only by grant. . . . In 19 C.J. p. 945, sec. 156, n. 60, it is said: 'So long as a tract remains in one ownership, there can be no dominant and servient tenements as between different portions, and the owner may rearrange the quality of any possible servitude.' *Hill* v. *Bernheimer*, 78 Misc. 472 [140 N.Y.S. 35], cited thereunder, in effect holds that one who owns an entire tract or adjoining parcels of land, by distributing or redistributing the burdens of the various portions, creates no easement until a severance of title occurs. To like effect is *Packer* v. *Mayor & Council of City of Woodbury*, 3 N.J.Misc. 661 [129 A. 406, 407]. Hence, in this instance, notwithstanding the recorded plat with the certificate as to building line restriction indorsed thereon, it cannot be said that there was an effective grant of such easement or restriction until a severance of title occurred. Until some person other than the Rex Realty Company, owner of the entire subdivision, acquired title to some part thereof, the owner of the whole had a perfect right to convey in any manner fairly agreed upon between it and the party to whom the first conveyance was made. . . .

. . . . . . . . . . . . .

"The intention of the parties is the paramount and controlling question. That intention is to be ascertained from the terms of the deed considered in the light of the circumstances surrounding the parties."

We quote the following from *Martin* v. *Holm*, 197 Cal. 733, 742 [242 P. 718]:

"In support of their right to the relief prayed for, appellants rely, first, and in part, on estoppel, based on oral and written representations, made at the time of and prior to sales of lots by the original owners, to the effect that the

entire Western Heights tract was restricted against business uses. As plaintiffs in the court below they, therefore, attempted to show that when the tract was subdivided and the lots were placed on sale, maps and literature were given to prospective purchasers, and to those who bought lots, which contained information concerning the character of the purported restrictions. The trial court very properly sustained the objection of the defendants to the admission of any such evidence. The original owners may have had a general plan of restriction in mind. They may have led the various grantees to believe that the alleged restrictions were executed as part of a general scheme; but it is not the intent of the grantors that governs in such cases. It is the joint intent of the grantors and their grantees. As between the grantors and each of their grantees, the deeds between them constitute the final and exclusive memorial of whatever intention may have existed.''

Said our Supreme Court speaking upon this same subject in *Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472, 479 [101 P.2d 1099, 130 A.L.R. 120]:

. ''The law is well settled in California, that the deed is the final and exclusive memorial of the intention and rights of the parties.''

■ We think enough has been said to demonstrate that when Glenn Michael and his wife subdivided their property, filed for record a map showing the subdivision and recorded the declaration of restrictions, they unquestionably had in mind that they would convey the various lots subject to the proposed equitable servitudes thereby evidenced, but, having gone that far, they had not as yet created any servitudes whatever. They were still the owners of the whole property and until and unless they made conveyances, which conveyances contained the provisions for equitable servitudes either by direct expression in the deeds or by reference to the recorded declaration of restrictions or other effective means of creating by the severance, and as a part of it, the equitable servitudes counted upon herein, those equitable servitudes would not arise. So far as the record in this case is concerned, the Michaels appear to have contented themselves with recording the map, recording the declaration of restrictions and thereafter granting the parcels in fee simple by deeds which contained no reference to servitudes. They evidently believed that reading the declaration to the grantees and telling them that the conveyances were being made subject to equitable

servitudes was sufficient to create those servitudes. It was not. We hold that, so far as the record here shows, no equitable servitudes existed.

The judgment is reversed.

Peek, J., and Schottky, J., concurred.