[Civ. No. 26034.   Second Dist., Div. Three.   Mar. 21, 1963.]

JOSEPH M. GIRARD et al., Plaintiffs and Appellants, v. DAVID MILLER et al., Defendants and Respondents.

Richard I. M. Kelton for Plaintiffs and Appellants.

David J. Sachs for Defendants and Respondents.

SHINN, P. J.—The present action is for a judgment forfeiting to Girard the title to a residential lot of defendants Miller (lot 26, tract 23261) by reason of violation of a condition subsequent allegedly contained in tract restrictions. The demurrer of defendants to the second amended complaint as amended was sustained without leave to amend and judgment for defendants was entered. Plaintiffs appeal.

The lot in question was purchased by Miller from Lee Realty Company. The deed did not state that the conveyance was made subject to any restrictions, conditions or reservations, nor make any reference thereto.

The complaint contains eight causes of action, namely, two for reformation of the deed to state that the conveyance was made subject to certain restrictions, conditions and reservations (hereinafter called restrictions), a cause of action for reversion of title upon the ground that Miller removed an oak tree from his lot in violation of the restrictions, two unclassified causes of action, two causes of action for declaratory relief and one to quiet title. All the causes of action are aimed at a single type of relief, namely, a judgment impressing upon the Miller property the burden of a condition subsequent and determining that title has reverted to Girard, (referred to as plaintiff) who is the owner of a lot in the tract and any existing right of reversion of the Miller title.

Relevant facts are the following. Lee Realty Company was the owner of a residential subdivision in Los Angeles known as tract 23261. It was alleged that prior to July 15, 1958,

some of the lots were sold to diverse persons and "prior to July 15, 1958, Lee Realty Company did cause to be imposed, by virtue of the aforesaid conveyance, on virtually all of said Tract including Lot No. 26, a set of Restrictions, Conditions and Reservations" (as set out in copy thereof attached to the complaint), and that the restrictions were so created in pursuance of a general scheme for the development of the tract. The restrictions provided for the creation of an architectural committee, no building could be constructed on a restricted lot and no tree having a diameter of more than 6 inches should be removed without the approval of the committee. It was also provided that a breach of any of the "Restrictions, Conditions or Reservations" would cause title to the premises to revert to Lee, its successors or assigns, who would thereupon have the right to reenter and take possession of the property. The controversy which has occasioned this litigation arose when Miller removed a tree from his lot without permission of the committee.

The appeal presents three questions, (1) did the deed to Miller subject his lot to a condition for reversion of title for violation of the restrictions as to use, (2) did the complaint state a cause of action for reformation of the deed, and, (3) were the facts alleged sufficient to show that the Miller lot is subject to the restrictions.

In seeking to establish his right to a reversion of title, plaintiff relies upon the doctrine of equitable servitude, which is that when a tract has been subdivided into lots and is validly restricted of record by uniform limitations as to use, and with mutual rights of enforcement by and against the several lot owners, one who acquires a lot thereafter takes title subject to the servitude. The lots that are retained by the owner are restricted as the others are, and when transferred remain subject to the restrictions, even though conveyed by deed which makes no mention of them. If this were not so the rights of other lot owners would be invaded and the plan of the restrictions defeated by the conveyance of the remaining lots without any reference in the deeds to the restrictions.

Plaintiff contends that all lots were restricted, that a provision for forfeiture of title upon breach of established restrictions as to use attached to all lots in the tract as an integral part of the equitable servitude, and, therefore, that it was unnecessary for the deed to the Millers to state that it was subject to the restrictions, conditions and reservations. But the doctrine cannot be so extended. The essentials of an

equitable servitude in this connection are that it must be established of record that the restrictive plan operates for the benefit of all lots in the tract, imposes the burden of the restrictions upon all lots and confers mutual rights of enforcement upon the lot owners.

A provision in a restrictive plan for reversion of title in the event the lot owner violates restrictions upon the use of the land is no part of the equitable servitude. It is not for the benefit of the land, but to its detriment. It is not enforceable by the lot owners, but only by the grantor and his assigns at their option. It is not a restriction upon the use of the land. The simple fact that one owner holds title upon condition subsequent does not impose the condition upon the title to other lots in the tract. The original owner of the tract, as he sells more lots, is not required to convey them subject to the condition that title will revert upon breach of the restrictions. Although valid tract restrictions limiting the use of the land attach to all the lots, the right of the grantor to forfeit title upon breach of the restrictions originates in each separate deed and cannot be created without the consent of the grantees sought to be bound.

Lot 26 was in the unconditional ownership of Lee; it could have been sold and conveyed without imposing any condition whatever, and if a condition was to be imposed it could only have been done by deed which evidenced the grantee's consent to the condition.

From the facts alleged as a basis for forfeiture of the Miller title, and the applicable rules of law, we reach the following conclusions: the deed to Miller did not impose a condition upon the title; it is immaterial whether the lots in the tract were subject to the restrictions as to use and, individually, in the hands of the several owners, subject to reversion of title for breach of the restrictions. Conditions for reversion of title are not encompassed within equitable servitudes and even if the tract was restricted the Miller title was conveyed free from any condition subsequent, for failure to incorporate the same in the deed.

We shall consider next the cause of action for reformation of the Miller deed. It is alleged that Miller agreed to purchase the property through escrow and in accordance with a written agreement, consisting of escrow instructions to the Union Bank; that according to the terms of the escrow instructions the deed to Miller was to be conditioned upon the terms stated in the instructions; that ''the Union Bank, in

acting for the parties in preparing said deed made a mistake in that said deed as prepared by the Union Bank provided for the transfer to title of said property from Lee Realty Company to Miller, but said deed mistakenly omitted to expressly state that the title of Miller to said real property was subject and subordinate to the Restrictions, Conditions and Reservations of record.'' It was also alleged that Lee was not aware of the omission when the deed was executed and that Miller had no knowledge with respect to the terms of the deed until several weeks later.

The escrow instructions, which are incorporated in the complaint, constituted the contract between Lee and Miller and it is alleged that they specified the promises and duties of the Union Bank. They did not provide that the bank would prepare a deed or see to it that the deed contained reference to the restrictions. Upon the contrary, Lee agreed to hand in the deed. The instructions did not provide that title was to be conveyed subject to the restrictions. They did provide that a deed should be recorded when the money was paid and the Title Insurance and Trust Company had furnished its title policy noting that the lot was subject to the restrictions. These things were done. The escrow instructions constituted the final and entire contract. It is not alleged that the parties, or either of them, misunderstood or made any mistake in the instructions which they signed or that anything was omitted therefrom. The bank fully performed its duties in executing the instructions. Allegations that the escrow instructions imposed duties upon the bank which are not to be found in the writing, and that in complying therewith the bank made a mistake which it clearly did not make must be disregarded. Other allegations as to terms of the contract which are not contained in it are mere conclusions and can add nothing to the contract.

Although it is alleged that Miller had previously made a deposit and an agreement to purchase the lot subject to restrictions these facts were alleged only as they related to the intentions of the parties. It is not alleged that this agreement and the escrow instructions together constituted the contract. It is not alleged that any part of the preliminary agreement was intended to be stated in the escrow instructions and was omitted through mistake. Upon the contrary, it is specifically alleged that the entire contract consisted of the escrow instructions and that they provided that the lot was to be conveyed subject to the restrictions. This, as we have seen, was not the case.

Since nothing was omitted from the contract, consisting of the instructions, as to which no mistake of the parties is alleged, no facts are alleged as a basis for reformation of that agreement, nor is reformation of the agreement sought.

Since the agreement did not provide that the deed was to state that it was subject to the restrictions, there is no basis for the contention that the deed did not conform to the agreement. If a mistake was made it was in the agreement, and yet none is alleged. The deed may not be attacked while the agreement goes unchallenged.

With respect to the alleged mistake in the deed, the learned trial judge stated: "Furthermore, a mutual mistake is not clearly indicated or alleged and any mistake appears to have been on one side only, that of the grantor. See generally *Hochstein* v. *Berghauser* (1899) 123 Cal. 681 [56 P. 547]; *McClure* v. *Cerati* (1948) 86 Cal.App.2d 74 [194 P.2d 46].)"

We must agree that the complaint failed to allege sufficient facts to state a cause of action for reformation upon the ground of mutual mistake. ▆▆▆ The cases mentioned by the court and numerous cases cited therein support the rule that in a suit for reformation of a contract for mutual mistake, in the absence of a clear recitation of facts showing how, when and why the mistake occurred, the pleading is inadequate as against a general and special demurrer. "There is no allegation of the first essential of a cause of action for reformation for mistake, namely, that the parties, here the Tottens and the insurers, made an agreement which, by mistake, was not correctly set forth in the contract. . . . In the absence of such an allegation, no cause of action for reformation exists." (*Totten* v. *Underwriters at Lloyd's London*, 176 Cal.App.2d 440, 448 [1 Cal.Rptr. 520].)

We have heretofore shown, and we repeat, that it is alleged that the bank failed to insert in the deed a recital which the agreement stated the deed would contain, and that this allegation is contrary to the terms of the agreement. ▆▆▆ Although the title company was expected to and did note that the title was subject to restrictions this was not the equivalent of an agreement on the part of Miller that the deed would state that it was subject to the restrictions. Knowledge possessed by Miller that some lot owners probably held titles which were subject to forfeiture in case restrictions were violated could not be converted into an agreement upon his part to accept a conveyance which stated that it was subject to the same condition. Both parties signed the escrow instruc-

tions, but it is not even alleged that Lee made a mistake in signing the instructions as they were written. To be sure, it is alleged that he did not notice when he signed the deed that it did not mention the restrictions, but no excuse is offered for his failure to read what he signed, and the fault was his own. Miller made no mistake. Nothing was omitted from the deed which he had agreed it should contain. The facts alleged show, at most, an unexcused oversight upon the part of Lee in subscribing the company name to the instructions and the deed. No mutual mistake is alleged.

We take a critical view of this thrice amended complaint, by which it is sought to forfeit the title to valuable property. A deed is a sacred instrument. It may not be reformed upon less than a proven case which contains no flaw.

In *Lestrade* v. *Barth*, 19 Cal. 660 at p. 675, Chief Justice Field, speaking of an attempt to correct a mistake in a deed wrote: "The evidence, it is true, must be clear and convincing, making out the mistake to the entire satisfaction of the Court, and not loose, equivocal or contradictory, leaving the mistake open to doubt." The rule was correctly applied by the trial court to facts pleaded as a basis for reformation.

We must exercise great caution in weighing the sufficiency of the facts alleged to warrant reformation of the deed, lest we lay a foundation for an inequitable, unjust and legally unsupportable forfeiture of the title of defendants. Judgment forfeiting title upon proof of the facts alleged would be in violation of fundamental principles of law and equity and would lead the way to much mischief.

It is contended that the trial court evidently believed the Miller property to be subject to covenants for breach of which a cause of action for injunctive relief or damages would lie and should have held the complaint sufficient for this reason. We doubt that this was a theory which Girard urged upon the trial court. In a memorandum filed by the trial judge it was stated in part: "This is an action to enforce reversionary rights or to establish right of re-entry for breach of conditions subsequent. The condition broken is 'the cutting down of an oak tree.' " Nevertheless the contention could have been urged under the pleadings, and we shall consider it.

We are of the opinion that the complaint failed to show that the tract was restricted. It is alleged that Lee executed a declaration of restrictions, conditions and reservations as per copy attached to the complaint, and while it is not alleged that the declaration was ever recorded, this, no

doubt, was an oversight. It is alleged that by deeding out some of the lots to diverse persons Lee imposed "by virtue of the aforesaid conveyances, on virtually all of said tract, including lot No. 26, a set of restrictions" etc. There is no allegation that Lee ever executed a deed to a lot which stated that it was subject to restrictions of record, and no allegation of facts which would have placed the tract or an identified portion of it under the equitable servitude.

The issuance of deeds containing restrictions or the recording of a declaration of restrictions are equally ineffectual to impose restrictions on the tract until at least one deed is recorded which makes the restrictions applicable to the entire tract. This has been the rule ever since the leading case of *Werner* v. *Graham*, 181 Cal. 174 [183 P. 945], was decided in 1919 and has become a rule of property. (*Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472, 479 [101 P.2d 1099, 130 A.L.R. 120]; *Berryman* v. *Hotel Savoy Co..* 160 Cal. 559, 566 [117 P. 677, 37 L.R.A. N.S. 5]; *McBride* v. *Freeman*, 191 Cal. 152, 156 [215 P. 678].)

The conclusion that the restrictions were imposed upon some of the lots is insufficient in view of the failure to state facts which would subject the lots to the restrictions. And the failure, from first to last, to allege such facts was no doubt intentional. The omission is consistent with plaintiff's theory that it was not necessary to state in any of the deeds that it was subject to the restrictions, and that *Werner* v. *Graham*, *supra*, and the cases which followed, were wrongly decided.

From the time of their first demurrer defendants challenged the sufficiency of the complaint to show that the tract had been restricted. They strongly urged, under the holding of *Werner* v. *Graham*, *supra*, that it was necessary that at least one deed be recorded which manifested the intention of the grantor to restrict the lots of the tract for their mutual benefit, and the demurrer specified uncertainty in the allegation that the lots were "subject" to the restrictions in view of the failure to state any facts which rendered them subject to the same. In the demurrer to the second amended complaint uncertainly was asserted for failure of the complaint to state "how or in what manner the restrictions were imposed on defendants' lot by Lee Realty Company as alleged on page 2, paragraph IV, lines 22 to 24." These objections all went to the failure of the complaint to allege that Lee had ever issued a deed which contained the restrictions, or which stated that it was subject to restrictions of record. After the demurrer was first sustained to the second amended complaint and

judgment entered for defendants the judgment was vacated upon motion of plaintiff and he was allowed to further amend. At all times Girard has consistently refused to meet the objection that the several complaints failed to allege that Lee ever issued a deed that stated it was subject to the restrictions. He has persisted in standing upon the pure conclusion of law that by means of certain conveyances he imposed the restrictions upon certain lots. His position as now stated, is that the allegation was sufficient for purpose of the demurrer and that Miller would have an opportunity at a trial to prove that the lots have never been restricted. If the conclusion had not been challenged as a mere conclusion it no doubt would have been deemed sufficient, but when its insufficiency was repeatedly pointed out, and plaintiff persistently refused to correct the inadequacy, the only reasonable conclusion is that he could not allege that any lot was conveyed by deed which stated it was subject to the restrictions. This is all the more reasonable that it is consistent with the contention, still maintained, that the restrictions were imposed upon the lots by the declaration that was placed of record and that reference to them in any deed was unnecessary.

Plaintiff is well aware of the settled rule that a declaration of tract restrictions, although of record, is not effective to impose an equitable servitude until at least one lot has been conveyed by deed which stated it was subject to the restrictions, and made them applicable to all the described lots. Plaintiff merely disagrees with the rule, contending it is contrary to current business practices.

In *Murry* v. *Lovell*, 132 Cal.App.2d 30 [281 P.2d 316], the court affirmed the doctrine of *Werner* v. *Graham*, *supra*, that tract restrictions cannot be created except by recorded deed which makes them applicable to all the property sought to be affected. In *Murry*, the court held that in the absence of such a deed, a recorded declaration of restrictions imposed no servitude upon any of the lots. Any knowledge the buyers may have had of the restrictions, or any understanding they had that their lots would be restricted would not give rise to an equitable servitude. This has been an established principle of law for more than forty years.

It follows that the facts pleaded in the complaint herein are insufficient to show that the lot of the defendants is subject to the restrictions.

Plaintiff contends he had a right to go to trial upon his causes of action for declaratory relief and to quiet title, as if they were the only causes of action pleaded. We

cannot agree that the other causes of action can be ignored. Reformation of the deed was an essential step toward establishing the claim of plaintiff that the Miller title had been forfeited. With that remedy available and relied upon, the court could reasonably hold that declaratory relief was inappropriate and improper.

After three amendments the complaint stated all the facts upon which plaintiff depended for a judgment that the lot of defendants is subject to the restrictions. The situation is analogous to one in a suit for money in which all the facts are alleged in one count and are found insufficient to state a cause of action; the defect is not cured by the addition of a common count. (*Neal* v. *Bank of America,* 93 Cal.App.2d 678 [209 P.2d 825].) When the court determined the facts pleaded were insufficient to entitle Girard to a judgment declaring the lot subject to the restrictions it was not error to decline to send the case to trial upon a cause of action for declaratory relief, based upon the same facts. (See *Houghton* v. *Coberly,* 201 Cal.App.2d 820 [20 Cal.Rptr. 489].)

Under section 1061 of the Code of Civil Procedure the court may refuse to exercise the power to grant declaratory relief where the same is not necessary or proper at the time under all the circumstances. The availability of another form of relief that is adequate will usually justify refusal to grant declaratory relief. (*Wieber* v. *Worton,* 105 Cal.App.2d 626 [234 P.2d 114]; *Pacific Electric Ry. Co.* v. *Dewey,* 95 Cal.App.2d 69 [212 P.2d 255].) The refusal to exercise the power is within the court's legal discretion and will not be disturbed on appeal except for abuse of discretion. (*Cutting* v. *Bryan,* 206 Cal. 254 [274 P. 326].) No abuse of discretion is shown in the refusal to exercise the power when the plaintiff in the action in which declaratory relief is sought has alleged in separate causes of action all the facts upon which he relies for relief and they have been found insufficient.

We have disposed of all the contentions of the parties which we believe require decision for disposition of the appeal.

Plaintiff was granted liberal opportunities to amend his complaint and failed to remedy its defects. The demurrer to the second amended complaint as amended was correctly sustained without leave to amend, and judgment for defendants was proper.

The judgment is affirmed.

Ford, J., concurred.

FILES, J., Dissenting.—I would reverse the judgment on the ground that the complaint states a cause of action on a contract.

It is alleged that plaintiff Lee accepted defendants' written offer for the purchase of a lot, as set forth in a deposit receipt. This document called for a conveyance subject to covenants, restrictions, reservations, rights of way and easements of record, if any. It is alleged that the property was then subject to the restrictions and conditions which are set forth in exhibit C attached to the complaint, and that the parties understood and agreed that the conveyance would be subject to these.

Unlike most of the cases dealing with restrictions on land, this action is between the contracting parties. The pleading discloses a contract between defendants as promisors, plaintiff Lee as promisee, and plaintiff Girard as the third party beneficiary. The cause of action therefore does not depend upon the effect of the recording statutes or upon whether a covenant runs with the land. The case is not governed by *Werner* v. *Graham,* 181 Cal. 174 [183 P. 945], which dealt with a situation in which there was no privity of contract. The cause of action on the contract is not defeated by plaintiffs' failure to plead facts showing equitable servitudes binding the entire tract.

There is nothing in the escrow instructions which is inconsistent with plaintiffs' claim. The escrow instructions are a means of instructing the escrow holder as to the consummation of the transaction, and thus are some evidence of the terms of the transaction; but the written instructions to the bank do not necessarily reflect all of the terms of the agreement between buyer and seller, nor do they invariably supersede the agreement for sale. (*Keelan* v. *Belmont Co.,* 73 Cal.App.2d 6 [165 P.2d 930].) I do not find any allegation in the complaint that the entire contract between buyer and seller consisted of the escrow instructions. The form of the deed is not prescribed by the escrow instructions. The seller was required to provide a policy of title insurance showing title vested in the buyers free of encumbrances except certain items, one of which was "covenants, conditions, restrictions, reservations, rights, easements of record." The seller was required to furnish any instruments necessary to induce the title insurance company to issue such a policy. Beyond that,

the form of the deed was immaterial, so far as the requirements of the escrow instructions were concerned.

It is not necessary to reform the deed in order to enforce the alleged contract. However, the complaint here contains the usual elements of a cause of action for reformation. (See 2 Witkin, California Pleading, p. 1392.) The instructions say that the seller will "hand" the bank a deed, but the word "hand" obviously indicates delivery of a signed instrument. This is not inconsistent with the allegation of the complaint that both parties employed the bank to act as scrivener. It is a familiar practice for the escrow company to prepare the deed, which the seller then signs and "hands" into the escrow. Under the pleadings the parties intended the restrictions to bind the defendants, and the parties made a mutual mistake in failing to see that their scrivener provided a deed which would memorialize that intention.

This is not to say that plaintiffs are entitled to a forfeiture, or any other relief. If, as defendants contend, the restrictions do not bind the other lots in the tract, there may be a serious problem of failure of consideration which might be a reason for not enforcing the restrictions against defendants. This is a matter of defense. If the case does not justify a forfeiture plaintiffs may be entitled to some other remedy. The alleged restrictions cover a wide variety of matters pertaining to future use of the property. Plaintiffs are entitled to a declaration as to whether any of defendants' alleged promises are enforceable by injunction or recovery of damages.

A petition for a rehearing was denied April 17, 1963. Files, J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied May 14, 1963.