[Civ. No. 17215.   First Dist., Div. Two.   Oct. 25, 1956.]

ARNOLD L. INGRAM, Appellant, v. REX RANDOLPH PHILIP GLISSMAN et al., Defendants; UNITED PACIFIC INSURANCE COMPANY (a Corporation), Respondent.

John E. Troxel for Appellant.

Thomas E. Davis for Respondent.

DRAPER, J. pro tem.\*—Defendant United Pacific Insurance Company demurred generally and specially to the amended complaint. The demurrer was sustained with leave to amend. The order sustaining the demurrer did not specify the grounds upon which the court based its ruling. Plaintiff declined to amend and, after notice, judgment of dismissal was entered. Plaintiff appeals.

Respondent was the surety upon a bond filed by defendant Glissman, who is not a party to this appeal, as a real estate and business opportunity broker. This bond was not filed until March 7, 1955, although Glissman had acted as such a broker for some time before that date. It appears that the bond remained in effect about 60 days.

Appellant alleges that he employed Glissman in November of 1954 to locate and negotiate for the purchase of a bar and restaurant by appellant. On December 2 a seller had been found. Glissman prepared and appellant executed escrow instructions which provided that the escrow was to be closed and the purchase completed "after the issuance to plaintiff of an on-sale general liquor license." The signed instruc-

---

\*Assigned by Chairman of Judicial Council.

tions, with "several promissory notes in blank and various other documents" were delivered by appellant to a corporate escrow holder. "Plaintiff had, prior to . . . March 7, 1955, delivered the sum of Three thousand dollars ($3,000) to defendant Glissman . . . as plaintiff's agent."

The liquor license was issued to appellant "in February, 1955." It is then alleged that "on or about March 17, 1955" appellant instructed Glissman to deliver the $3,000 to the escrow holder and "to take the necessary steps to close the said escrow and complete the said purchase," and that Glissman "disobeyed" this instruction "and failed" to close the escrow or complete the sale. It is also alleged that "at a time unknown to plaintiff," but "subsequent to" an occurrence which apparently is the December 2 execution of the escrow instructions, Glissman "without authority" obtained from the escrow holder the "blank promissory notes" and "filled them in" for a "cumulative amount" of $11,500, $4,500 of which were made payable to the seller of the business and were delivered to the seller by Glissman "on or about March 10." Appellant further alleges that "by reason of" Glissman's failure to obey instructions to close the escrow, the seller rescinded the agreement of purchase and sale. Damages claimed are the $3,000 paid to Glissman, $4,000 in bills incurred by appellant while operating the bar pending completion of the sale, attorney's fees, and $200 which appellant "was required" to pay to the seller "on account of" the promissory notes "filled in" and delivered by Glissman.

The foregoing summary involves a considerable rearrangement and simplification of the complaint and, confusing as it may seem, is, we think, more understandable and more favorable to appellant than the pleading itself.

Defendant surety demurred. In addition to the general demurrer, grounds of uncertainty, ambiguity and unintelligibility were specified. Among the stated grounds were the failure of the complaint to state what acts, if any, Glissman did after March 7 which resulted in any loss to plaintiff; whether Glissman had any monies belonging to plaintiff when the bond became effective; or whether plaintiff's contract employing Glissman was oral or written.

Appellant declined to amend, although granted leave to do so. He must, then, stand upon his pleading as against all the grounds of demurrer. If the complaint is vulnerable to any of the grounds stated in the demurrer, the judgment must be affirmed. (*Metzenbaum* v. *Metzenbaum*, 86 Cal.App.

2d 750 [195 P.2d 492]; *Evarts* v. *Jones,* 104 Cal.App.2d 109 [231 P.2d 74]; *Hendricks* v. *Osman,* 72 Cal.App.2d 465 [164 P.2d 545].)

There is room for grave doubt as to the sufficiency of the allegations to constitute a cause of action against respondent. Of course, a cause of action is stated against Glissman. But to charge respondent, it is essential for appellant to show that the claims arose during the short period after March 7 when the bond was in effect. The bond, which is pleaded in the amended complaint, is not retrospective by its terms, and the law is clear that restrospective effect is not to be implied. (*Anaheim Union Water Co.* v. *Parker,* 101 Cal. 483 [35 P. 1048]; *Palmer* v. *Continental Casualty Co.,* 205 Cal. 34 [269 P. 638].)

In any event, it is clear that the special demurrer is well taken. The allegations as to the $3,000 do not show for what purpose or on what conditions the money was delivered to Glissman or whether it was delivered to him in his capacity as a real estate or business opportunity broker. If the payment were made to Glissman for use in this purchase, there is no allegation as to when, either under plaintiff's contract with Glissman or under the escrow instructions, it was to be paid into the escrow or to the seller. In view of the brevity of the effective period of the bond, these uncertainties become substantial. They are aggravated by the fact that appellant refused to allege whether his agreement with Glissman, upon which this action against Glissman's surety is founded, was oral or written. (Code Civ. Proc., § 430, subd. 10.) There is no direct allegation that Glissman was obligated to pay the money to the seller. If this obligation be assumed, there is no allegation as to the date it was to be performed. The allegation of demand upon Glissman on March 17 is not helpful, since there is nothing to show that Glissman's duty to pay arose at the time of demand. In this respect, the case is clearly distinguishable from *Coover* v. *Cox,* 95 Cal.App. 1 [272 P. 343], where a deposit receipt required payment only on demand. For all that appears here, performance may very well have been due, and the obligation breached, long before the bond became effective. There is ample room to infer that this is the fact, for issuance of the liquor license, which was the condition precedent to the sale and purchase, is alleged to have occurred well before execution of the bond.

All that is said above applies equally to the alleged mis-

appropriation of the notes. As to these, there is the further fact that they are alleged to have been delivered to a corporate escrow holder, and there is nothing to show that Glissman acted under or used his broker's license to misappropriate them from that holder. Also, it is affirmatively alleged that they were ''obtained'' from the escrow holder at a time unknown to plaintiff. The claimed loss resulting from appellant's operation of the business is attributable to Glissman only by reason of the latter's failure to close the escrow by payment of the money and proper delivery of the notes. Thus this claim falls if the allegations as to the money and notes are vulnerable to demurrer.

Appellant argues at length that he need not establish conversion in order to recover upon the bond. In this he may well be correct. The bond is conditioned upon Glissman's compliance with all obligations assumed by him under his real estate and business opportunity licenses. But, however broad may be the obligation of the surety as to the nature of the breach protected against, it is abundantly clear that the time of coverage is strictly limited. It is incumbent upon appellant to bring his claim within the period of the bond.

Here he was given full opportunity to clear up the obvious uncertainties of his pleading. Many, if not all, of the facts sought by the special demurrer were clearly within his knowledge. Nonetheless he refused to amend. In such circumstances, it is by no means unfair to apply the rule that ''Doubtful language in a pleading . . . will be construed against the pleader.'' (41 Am.Jur. 335.) Appellant's failure to amend compels the conclusion that allegations to eliminate the uncertainties of his pleading would be adverse to him. The rule would be much different if the demurrer had been sustained without leave to amend. But here appellant was given every opportunity to cure the defects, and he alone must accept the consequences of his failure to do so.

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.