[Civ. No. 8852.   Third Dist.   Nov. 28, 1956.]

LEO SPIVA, Respondent, v. PHOENIX INDEMNITY
COMPANY (a Corporation), Appellant.

Weinstock, Anderson, Maloney & Chase for Appellant.

L. A. MacNicol and E. R. Vaughn for Respondent.

VAN DYKE, P. J.—Respondent was a general contractor licensed as such. Hs usually confined his work to road building, cement work, general building and paving. He described himself as a small, general contractor. He operated in and out of Modesto where he had a business address at his home. There, he kept his operating equipment. For some time prior to September, 1952, due to strikes in the industry, he had done little work and had purposely let his liability insurance lapse. An earthquake had damaged buildings in Bakersfield, and respondent went there with the purpose of bidding for some demolition work. He bid three jobs and succeeded in being the best bidder on a job of wrecking and removing a damaged incinerator and chimney belonging to a school. Liability insurance was required, and on September 12th respondent went to appellant's agent in Bakersfield to purchase it. He was given a certificate of insurance which enabled him to proceed with the job he had successfully bid, and he finished the work in approximately a week. A formal policy, countersigned at Bakersfield, September 19, 1952, was written by appellant, covering the period from September 12, 1952, to September 12, 1953.

Seven or eight months after the initial date of the policy and while respondent was performing contract work in Merced, his operations damaged property belonging to others through spraying hot sealing oil on automobiles parked nearby. A number of claims were made against him. He referred these claims to appellant, and appellant denied liability, claiming that the coverage involved was not within its policy. Respondent brought this action for declaratory relief, and the case was tried upon issues made up as to the extent of coverage afforded. Appellant filed a cross-complaint asking that the policy be reformed to make it applicable only to the school job, but the issues thus raised were not tried, and the cross-complaint was abandoned. Respondent tendered no issues concerning either reformation or estoppel to deny coverage. Both parties assert that they stand on the contract as written, though differing as to its meaning. The court received evidence as to the circumstances surrounding the making of the contract as an aid to its interpretation and then construed the contract as affording coverage for claims arising out of respondent's performance of the work in Merced which we have referred to. From the ensuing judgment so declaring, appellant appeals.

Respondent testified that, while he did not generally operate

in Kern County, on this occasion he went down there for the specific purpose of bidding on some demolition jobs; that the school accepted his bid on the incinerator and chimney jobs, but required liability insurance which would protect the school; that he was then operating without liability insurance. He was referred to the Roberts Insurance Agency which wrote insurance through appellant in order that he might secure the necessary coverage. He told the agency that he was a contractor, described the job he had bid, and said that he had to cover the job at once as he then had no liability insurance. The agency called up appellant at its San Francisco offices, and within a few hours received authorization to write the insurance required. A certificate of insurance was given respondent, sufficient in form and substance to enable him to satisfy the school's requirements and he paid a year's minimum premium. The certificate stated appellant had issued to Spiva a public liability policy covering bodily injury and property damage within certain limits and under the heading "Description and location of operations covered" there was typed the following: "Salvage operations—Kern County and elsewhere in California." The term of insurance was given as from 9-12-52 to 9-12-53. It was stated that the certificate was issued at the request of the Kern County Union High School. When the school job was completed respondent returned to Modesto, taking no more jobs in Kern County. The policy, as later written by appellant, was never delivered to respondent, but he testified that his draft was delivered to the school, and it appears that the parties are not in dispute that the copy of the policy introduced in evidence at the trial was a full, true and correct copy of the one actually issued by appellant. Respondent made no inquiry as to, or request for, the policy until claims were made against him. Under the circumstances, the policy stands as an integration of the contract between the parties subject only to such construction as is necessary to clarify any ambiguities that may exist.

The policy is written on a form entitled "Manufacturers' and Contractors' Public Liability Policy." It states the company's agreement to pay on behalf of the insured all sums which the insured should become obligated to pay by reason of liability imposed upon him by law for damages arising out of the defined hazards. The definition of hazards, so far as material here, reads as follows: "Division 1. Premises—Operations. The ownership, maintenance or use of the premises, and all operations during the Policy period

which are necessary or incidental thereto." This language, of course, suggests that the premises will be described in the policy, and that the coverage will be limited to such described premises and to accidental damage arising out of the ownership, maintenance, or use thereof, including operations necessary or incidental to such ownership, maintenance, or use. But when we turn to the declarations wherein the form furnishes opportunity for description of the premises, we find the following: "Location of Premises KERN COUNTY AND ELSEWHERE IN CALIFORNIA." We find further that the space intended for a statement of the interest of the insured in the premises is left blank as is also the space intended for a statement of the part of the premises occupied by the insured

The definition of hazards suggests business premises, owned, maintained, or used by the insured as a contractor, but there is no suggestion in the negotiations that Spiva owned any business premises in Kern County, or that he expected to own, maintain, or use business premises therein. There is no description of business premises at all, and the only policy reference to such premises is the statement that they are somewhere in California. Under the heading "Item 4. Purposes of Use 1. Premises—Operations," there is typed the following: "SALVAGE OPERATIONS—including incidental wrecking, shoring or other structural work the handling of machinery in damaged buildings, and salesmen or clerical office employees at site of wrecking." It is suggested that this locates the premises as the site of the school job, but that cannot be, for it conflicts with "KERN COUNTY AND ELSEWHERE IN CALIFORNIA." The suggestion is also in conflict with the fact that the school job was expected to be, and was, completed in a short time, whereas the policy was issued for a year, and the minimum premium for that period was accepted. The last quoted matter concerning "SALVAGE OPERATIONS," etc., together with "KERN COUNTY AND ELSEWHERE IN CALIFORNIA" as the only description of premises authorizes and, in our opinion, compels this policy to be construed as a job site policy. This construction is in harmony with that of the trial court, which declared that the policy did cover the insured's job site operations on the parking lot he was improving in Merced. This construction is also in harmony with a statement in the policy as follows: "The unqualified word 'premises' wherever used in this Policy shall mean (a) the premises designated in the declarations including buildings and structures thereon and the ways immediately

adjoining and (b) when a territory is designated in the declarations, in addition to or *in lieu of a specific location, places within said territory while used by or on behalf of the named Insured, . . .*" (See, for similar constructions of practically identical policies, *Associated Indem. Corp.* v. *National Surety Corp.*, (Tex.Civ.App.) 287 S.W.2d 714, and *Berger Bros. Elec. Motors, Inc.* v. *New Amsterdam Casualty Co.*, 293 N.Y. 523 [58 N.E.2d 717, 156 A.L.R. 1281].

■ Construing this policy, however, to cover the premises on which respondent was performing a contract is not enough to fasten liability upon appellant. The stated coverage is for accidental damage arising out of the insured's use of the premises, and the policy declarations prescribe the purposes of such use and thereby limit the coverage to the described use, that is: "Salvage Operations—including incidental wrecking, shoring or other structural work the handling of machinery in damaged buildings, and salesmen or clerical office employees at site of wrecking." As we have noted, this same general limitation was stated in the certificate of insurance given to Spiva for delivery to the school authorities. Whatever uncertainties or ambiguities may have afflicted the balance of the policy, these provisions are neither uncertain nor ambiguous. They limit the coverage to salvage operations as therein described. The evidence is clear that in improving the parking lot, Spiva was in no sense engaged in salvage operations and particularly is it demonstrated that spraying hot oil on automobiles belonging to the claimants was not an accident which arose out of salvage operations. We conclude that except by operation of an automatic insurance clause next discussed the policy did not cover Spiva's operations on the Merced lot.

■ Finally, respondent contends that, in all events and however construed, the policy picked up coverage not otherwise covered by the insuring agreements because of the provisions for automatic insurance for additional operations on described premises. We have already said that so far as premises be concerned this was a job site policy that covered salvage operations on any job site whereon Spiva conducted such operations. The automatic insurance provisions so far as here pertinent reads as follows: "Automatic Insurance for Additional . . . Operations, . . .. If the named Insured . . . undertakes operations not insured by this Policy, such insurance as is afforded under division 1 of the Definition of Hazards applies also to such . . . operations." Division

1 of the Definition of Hazards thus referred to so far as here material reads as follows: "DEFINITION OF HAZARDS Division 1. Premises—Operations. The . . . use of the premises, and all operations during the Policy period which are necessary or incidental thereto." We have already said that Spiva, while working on the Merced parking lot, performing work undertaken by him as a contractor was not engaged in salvage operations. It follows that he was engaged in other operations; operations within the scope of his business as declared by him to the appellant, and upon premises described in the policy. The sole purpose of the inclusion in a policy of an automatic insurance provision is to extend coverage. It can have no other purpose. We conclude, therefore, that coverage for the operations on the Merced parking lot was afforded by the automatic insurance provisions. Appellant argues in this respect that coverage for such work was expressly excluded by exclusion provision (d) which reads as follows: "This Policy does not apply: . . . (d) under divisions 1 . . . of the Definition of Hazards, to liability with respect to . . . operations on or from other premises which are owned, rented or controlled by the Insured." But as we have construed the policy the premises here involved are not "other premises" but are the described premises. The exclusion, therefore, does not operate.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.