[Civ. No. 18419. First Dist., Div. One. Dec. 21, 1959.]

HARRY TOTTEN et al., Appellants, v. UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING CERTIFI- CATE E. B. 4102 et al., Respondents.

Robert H. Kroninger, Harold A. Galloway, Donahue, Richards & Gallagher and Thomas Schneider for Appellants.

Derby, Cook, Quinby & Tweedt for Respondents.

DUNIWAY, J.—This is a companion case to *Talizin* v. *Oak Creek Riding Club,* No. 18457, this day decided, *ante,* p. 429 [1 Cal.Rptr. 514]. Plaintiffs in this case, who will be referred to as "the Tottens," are the defendants in that case. They had procured from the defendant insurers a policy of liability insurance, which was in effect at the time of the accident, but the insurers denied that the policy covered the liability asserted in the Talizin case. The Tottens therefore, after judgment went against them in the Talizin case, instituted this action against the insurers.

Two questions are presented: 1. Was the liability asserted against the Tottens in the Talizin case within the coverage of the policy? 2. If not, does the complaint properly plead a cause of action to reform the policy?

The complaint alleges two causes of action. The first asserts liability under the policy as written and the second demands reformation of the policy to include coverage that will bring the accident within the terms of the policy "if in fact said insurance contract does not contain a provision applying to the incident out of which the loss herein arose."

The court sustained a demurrer to the complaint, as to the first cause of action, without leave to amend, and as to the second, with leave to amend. The court's order recites that "[c]ounsel for plaintiff . . . stated that the first cause of action alleged the facts as favorably as he believed they could be alleged . . ." The Tottens then filed a written election "to stand upon the aforesaid Amended Complaint and each count thereof."

Under these circumstances, ". . . if the complaint is objectionable upon any ground the judgment of dismissal must be affirmed." (*Metzenbaum* v. *Metzenbaum,* 86 Cal.App.2d 750, 752 [195 P.2d 492]. See also *McClure* v. *Cerati,* 86 Cal. App.2d 74, 82 [194 P.2d 46] ; *Mulligan* v. *Wilson,* 103 Cal. App.2d 664, 668 [229 P.2d 858] ; *Wilson* v. *Loew's Inc.,* 142 Cal.App.2d 183, 196 [298 P.2d 152] ; *Ingram* v. *Glissman,* 145 Cal.App.2d 418 [302 P.2d 640].)

It appears from the complaint that the Tottens operated a horse stable at the Oakland address described in the policy as "the premises"; that while the policy was in effect they

were the bailees of a horse known as "Peek-a-Boo"; that the horse was entered in a horse show with the knowledge and consent of the Tottens and that one Talizin was injured by the horse as a result of its misconduct. It also appears that the horse show was held at the St. Francis Riding Club in the city and county of San Francisco, and that the animal was ridden by one Inez Thompson. The complaint does not state that Inez Thompson hired the horse from the Tottens or that "Peek-a-Boo" was in the Tottens' possession as a saddle animal for hire. It is further alleged that Talizin recovered a judgment against the Tottens for damages and costs, that the Tottens demanded that the insurers defend the action, which was refused, and that the liability incurred was within the coverage of the policy but that the insurers refused to pay it.

The insurance policy is attached to the complaint as an exhibit. The named assured are the Tottens "DBA OAK CREEK RIDING CLUB" and the "type of coverage" is described as "OWNERS' LANDLORDS' AND TENANTS AND TEAMS' LIABILITY." The policy recites that the agents have procured insurance "in accordance with the terms and conditions of the form(s) attached." Attached is a form headed "DECLARATIONS," item 2 of which described the "Location of premises" as "2923 MOUNTAIN BLVD, OAKLAND, 2, CALIFORNIA." Item 3 of the Declarations states that "The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges." This is followed by a set of blank columns headed "PREMISES-OPERATIONS," under which appears a column headed "CLASSIFICATION OF OPERATIONS," in somewhat smaller capitals. In this are typed, with a premium charge opposite each, two items: "BOARDING OF HORSES" and "RIDING INSTRUCTION." Each is limited to what is called "Coverage A." The "AGREEMENTS" at the bottom of the Declarations form define "Coverage A" in part as follows: ". . . liability imposed . . . by law for damages, . . . sustained by any person . . . , caused by accident and arising out of the hazards defined in the special provisions." The "SPECIAL PROVISIONS" contain a paragraph "A" headed "DEFINITION OF HAZARDS" and reading in part as follows: "PREMISES-OPERATIONS. (a) The ownership, maintenance or use of the premises . . . ; (b) all operations . . . which are necessary or incidental thereto; . . . (d) equipment or other property rented to or located for use of others but not sold."

Paragraph "E" of the special provisions is headed "PREMISES DEFINED" and reads "The unqualified word 'premises'

. . . shall mean: (1) the premises designated in the declarations . . ., including buildings and structures thereon and the ways immediately adjoining; (2) other places while used by or on behalf of the named Assured . . ."

Attached to the policy is a rider which states " . . . it is hereby understood and agreed that this Certificate shall cover Saddle Animals for Hire anytime [sic] hereunder to the contrary notwithstanding. All other terms and conditions remaining unchanged."

*The first question is, does the policy cover the liability incurred? We hold that it does not.*

In considering this question we must apply the following rules recently restated by the Supreme Court: "It is likewise settled that in the construction of a contract, the office of the court is simply to ascertain and declare what, in terms or in substance, is contained therein, and not to insert what has been omitted or omit what has been inserted. (Code Civ. Proc., § 1858.)

"This rule is applicable to insurance contracts, as was pointed out by Mr. Justice Spence, speaking for this court, in *New York Life Ins. Co.* v. *Hollender,* 38 Cal.2d 73, 81 [7] [237 P.2d 510], where he stated: 'In construing life insurance policies as in the construction of other contracts, the entire contract is to be construed together for the purpose of giving force and effect to each clause. (Citations.)

While it is settled law that in case of doubt the provisions of the insurance contract will be construed most strongly against the insurer (citations), *the rule is equally well established that where the terms of the policy are plain and explicit, the court will indulge in no forced construction* so as to cast a liability upon the insurance company which it has not assumed (citations). (Italics added.)" (*Jensen* v. *Traders & General Ins. Co.,* 52 Cal.2d 786, 790-791 [345 P.2d 1].)

It is our opinion that the liability here involved does not fall within the plain and explicit terms of the policy. It is not an "all-risk" policy but is limited by its terms to three types of operations at the Oakland premises. These types of operations are: boarding of horses, riding instruction and saddle animals for hire, including operations necessary or incidental to such operations in the ownership, maintenance or use of the premises. At the oral argument, counsel for the Tottens urged that the entry of the horse in the exhibition at the St. Francis Riding Club was a part of a course of riding instruction to the rider, Inez Thompson. However, the com-

plaint contains no allegation that riding instruction was involved, nor does it allege that the animal in question was a saddle animal for hire or had been hired from the plaintiffs when the accident occurred. According to the allegations of the complaint, the horse was bailed to the Tottens, and being boarded at the premises. However, the accident cannot fairly be said to arise out of the boarding of the horse *at the premises,* or out of an operation incidental to such use of the premises. The Tottens removed the horse from the premises and exhibited it at a horse show in another location in a different city, allowing a third person to ride it. It can hardly be said that the St. Francis Riding Club was being "used" by or on behalf of the Tottens. The jumping exhibition by Inez Thompson, at that place, is not a risk which the insurers undertook to cover.

The demurrer raises, as a ground of uncertainty, unintelligibility, and ambiguity, that it cannot be ascertained from the complaint "what peril or risk set forth in said policy insures against plaintiffs' alleged liability." As has been shown, the only defined risk that might be claimed to apply, under the allegations of the complaint, is "boarding of horses." This, by the terms of the policy, is a risk assumed at the Oakland premises. The complaint does not allege that entering a boarded horse in a jumping exhibition in another city is necessary or incidental to the use of the Oakland premises as a part of one of the three covered operations, or that such an activity constitutes a use, by the Tottens, of the St. Francis Riding Club as a part of one of those operations. The court cannot take judicial notice that such an activity is necessary or incidental to the conduct of one of the covered operations in a riding club in Oakland. (18 Cal.Jur.2d, Evidence, § 19 at pp. 441-442.)

The complaint does allege that the horse was entered in the San Francisco exhibition in the course of the Tottens' business, and counsel asserts that this is sufficient. The difficulty with this argument is that the business is described in the complaint as including using horses in horse show exhibitions, which is not one of the operations insured. An allegation that the use was in the course of the Tottens' business could refer to this portion of their business, and thus such use would not be covered by the policy. The use must be necessary or incidental to a covered operation, not merely to the Tottens' business.

 Where a contract is pleaded *in haec verba,* and its ef-

fect is uncertain, the pleader must put a definite construction on it by averment. (*Durkee* v. *Cota,* 74 Cal. 313, 315 [16 P. 5]; *Silvers* v. *Grossman,* 183 Cal. 696, 700 [192 P. 534].)

The Tottens rely upon the statement of the Supreme Court, in *Bollinger* v. *National Fire Ins. Co.,* 25 Cal.2d 399, 405 [154 P.2d 399], that "the primary function of insurance is to insure." That case, however, is not in point; it does not involve a question of coverage. The question here is, against what risk does the insurance insure?

The case most nearly in point appears to be *Spiva* v. *Phoenix Indemnity Co.,* 146 Cal.App.2d 384, 386 [303 P.2d 777]. The terms of the policy were quite similar to those of the policy here involved, but the "premises" were described as " 'Kern County and elsewhere in California,' " as distinguished from the specific location described in the present policy. The "Declarations," under "Premises-Operations," listed "Salvage Operations." The particular operations were not salvage operations. The court held that the operations were not covered, even though the location (Merced) did fall within the broad definition of "premises." The court said: "Construing this policy, however, to cover the premises on which respondent was performing a contract is not enough to fasten liability upon appellant. The stated coverage is for accidental damage arising out of the insured's use of the premises, and the policy declarations prescribe the purposes of such use and thereby limit the coverage to the described use, that is: 'SALVAGE OPERATIONS' . . . Whatever uncertainties or ambiguities may have afflicted the balance of the policy, these provisions are neither uncertain nor ambiguous. They limit the coverage to salvage operations as therein described. The evidence is clear that in improving the parking lot, Spiva was in no sense engaged in salvage operations and particularly is it demonstrated that spraying hot oil on automobiles belonging to the claimants was not an accident which arose out of salvage operations. We conclude that except by operation of an automatic insurance clause next discussed the policy did not cover Spiva's operations on the Merced lot." (P. 388.) There is no similar automatic insurance clause in the present policy.

It follows that the demurrer to the first cause of action was properly sustained.

*The second question is whether the second cause of action, for reformation of the insurance contract, is properly pleaded. We hold that it is not.*

Reformation may be had "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties. . . ." (Civ. Code, § 3399.)

The complaint alleges "that in August, 1952, plaintiffs requested of one Gale R. Harris, an agent and employee of defendants, that he procure for plaintiffs a contract of insurance which would protect plaintiffs against liability to third persons arising out of their aforesaid business operations and arising out of plaintiffs' handling and use of horses boarded with plaintiffs and horses used by plaintiffs in giving riding instruction and in horse show exhibitions and for whose acts plaintiffs might be in any way responsible to third persons." The aforesaid business operations are described as "a horse stable in the City of Oakland, County of Alameda, State of California under the name and style of Oak Creek Riding Club."

It is further alleged that Harris knew that the Tottens were engaged in all of these operations, declared that he would procure the requested insurance, procured the policy in question on or about August 15, 1952, and represented to plaintiffs that the policy provided the requested coverage.

It is then stated: "That if in fact said insurance contract does not contain a provision applying to the incident out of which the loss herein arose, as aforesaid, such provision was omitted therefrom by defendants by their negligence and mistake and the acceptance of such insurance contract was obtained from plaintiffs due to the mistake of plaintiffs and plaintiffs' reasonable reliance on defendants and their agent and the belief of plaintiffs that said policy did in fact contain such a provision."

The grounds of demurrer are: failure to state a cause of action; the bar of the statute of limitations (Code Civ. Proc., § 338, subd. 4); and, as special grounds, that the complaint does not state:

"(b) what provision was omitted from said policy;

"(c) in what respect defendants were negligent or mistaken in issuing such certificate of insurance;

"(d) when plaintiffs discovered the alleged mistake or mistakes."

As we have seen, the judgment of dismissal must be affirmed if the demurrer is good on any ground, as the Tottens elected

to stand on the second cause of action, although leave to amend was granted.

The allegations as to Harris which are mere recitals, are insufficient to charge the insurers with responsibility for his knowledge or for any representations he made to the Tottens. (*Vilardo* v. *County of Sacramento*, 54 Cal.App.2d 413 [129 P.2d 165]; *Thomas* v. *Newmark Grain Co.*, 40 Cal.App. 491 [181 P. 72].) Thus, any agreement or mistake made by Harris is not shown to be an agreement or mistake of the insurers (*cf. Browne* v. *Commercial Union Assur. Co.*, 30 Cal.App. 547, 554 [158 P. 765]).

There is no allegation of the first essential of a cause of action for reformation for mistake, namely, that the parties, here the Tottens and the insurers, made an agreement which, by mistake, was not correctly set forth in the contract. It is not alleged that the insurers as distinguished from Harris, agreed to or did anything, except to issue the policy. In the absence of such an allegation, no cause of action for reformation exists. (*Bailard* v. *Marden*, 36 Cal.2d 703, 708 [227 P.2d 10].) Moreover, it is not alleged that the requested coverage of the handling and use of horses at riding exhibitions was to be covered anywhere except at the Oakland stable.

The Tottens' reliance upon *Cantlay* v. *Olds & Stoller Inter-Exchange*, 119 Cal.App. 605 [7 P.2d 395], is misplaced. In that case there was a general demurrer only. Also, the complaint in that case directly alleged what is not alleged in this case—that both parties agreed that the policy was to include the provision that was mistakenly omitted. Rather, this case is governed by the rules stated in *Auerbach* v. *Healy*, 174 Cal. 60, 62-63 [161 P. 1157], where the court said: "The rules of pleading in actions for the reformation of contracts are well established, and should be familiar. The complaint should allege 'what the real agreement was, what the agreement as reduced to writing was, and where the writing fails to embody the real agreement.' (34 Cyc. 972.) . . . It is necessary to aver facts showing how the mistake was made, whose mistake it was, and what brought it about, so that the mutuality may appear. (34 Cyc. 974; 14 Ency. Pl. and Pr. 42; *Wright* v. *Shafter*, 48 Cal. 275.) In this state mutuality is not always necessary. It is sufficient if there was 'a mistake of one party, which the other at the time knew or suspected.' (Civ. Code, § 3399.) But the facts showing a mistake of that character, in such a case, must likewise be alleged." (See

also *McClure* v. *Cerati, supra,* 86 Cal.App.2d 74; *Bank of Fruitvale* v. *Fidelity etc. Co.,* 35 Cal.App. 666, 670 [170 P. 852]; *Taff* v. *Atlas Assur. Co.,* 58 Cal.App.2d 696, 703 [137 P.2d 483].)

Because the second cause of action is insufficient for the reasons stated, we do not consider other grounds, including the statute of limitations, urged by the insurers in support of the demurrer.

The demurrer was properly sustained as to both counts. The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 17, 1960.