Filed 5/18/22  United Speciality Ins. Co. v. Zaracotas CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY, | D079384 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2020-00019199-CU-IC-CTL) |
| TIMOLEON ZARACOTAS et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Law Offices of Nick T. Reckas and Nick T. Reckas for Defendants and Appellants.

Lincoln Gustafson & Cercos, Christian W. Schmitthenner, and Melissa K. Mixer for Plaintiff and Respondent.


I

INTRODUCTION

Timoleon and Corinne Zaracotas owned two commercial buildings that were damaged during a fire.  They sued Camelot Roofing (Camelot) for

negligence, alleging that Camelot negligently caused the fire damage at issue while performing roof repairs on the properties. Thereafter, Camelot's commercial general liability insurer, United Specialty Insurance Company (United), filed the present action against Camelot and the Zaracotases, seeking a judicial declaration that it owed no duty to defend or indemnify Camelot in connection with the negligence lawsuit.

The trial court granted summary adjudication and entered judgment for United on grounds that Camelot failed to pay a self-insured retention necessary to trigger coverage under the insurance policy. The Zaracotases appeal the judgment and contend the court erred when it sustained a demurrer to two of their affirmative defenses.

We do not determine whether the trial court erred in sustaining the demurrer to the Zaracotases' affirmative defenses because the asserted error was harmless. Even if the demurrer ruling was incorrect, the court would have entered judgment for United based on Camelot's failure to pay the self-insured retention. Thus, we affirm the judgment.

## II

## BACKGROUND

## A

### *The Underlying Litigation*

Sergio Anaya is a roofing contractor who does business under the moniker Camelot. Camelot was the named insured of a commercial general liability insurance policy provided by United.[1] The policy guaranteed up to $2,000,000 in aggregate liability coverage and up to $1,000,000 in per-

---

[1] " 'Commercial general liability policies are designed to protect the insured against losses to third parties arising out of the operation of the insured's business.' " (*Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 78.)

occurrence liability coverage for covered losses, subject to various endorsements, exclusions, sublimits, and conditions.

In June 2019, the Zaracotases hired Camelot to repair leaky roofs on two commercial buildings they owned. While the repairs were being performed, a fire erupted and caused substantial damage to the buildings.

In November 2019, the Zaracotases filed a negligence action against Anaya and Camelot in the Superior Court for the County of Alameda, Case No. HG19043129 (hereafter, the Underlying Action). They alleged a Camelot employee negligently caused the fire while using a torch to apply rolled asphalt sheeting to the buildings' roofs. United furnished Anaya and Camelot with a defense in the Underlying Action, subject to a reservation of rights.

B

*The Complaint for Declaratory Relief*

In June 2020, United filed the present action against Anaya and the Zaracotases alleging three causes of action. The first cause of action sought a declaration that United had no duty to defend Camelot in the Underlying Action. The second cause of action requested a declaration that United had no duty to indemnify Camelot for any judgment the Zaracotases may obtain against Camelot in the Underlying Action. The third cause of action prayed for a declaration that, to the extent United owed a duty to defend or indemnify Camelot, its obligation was subject to a coverage limit of $50,000.

United asserted it did not have a duty to defend or indemnify Camelot because its insurance policy with Camelot excluded coverage for " 'property damage' arising out of, resulting from, caused by, or contributed to, alleged to be, or in any way related to … the use of any 'fire or heating devices' by or on behalf of any insured." The policy defined "fire or heating devices" to include

3

"a heat wand, welding equipment, open flame devices, torches, heaters, or any type of heat application, or any other equipment that generates heat or sparks in the normal course of its operation."

An endorsement to the policy amended the heating device exclusion to provide coverage of up to $50,000 for property damage that would otherwise fall within the exclusion. However, the endorsement required the insured (Camelot) to adhere to certain safety precautions as a condition precedent to coverage. According to United, Camelot did not satisfy the condition precedent and, therefore, it was not entitled to coverage under the endorsement.

C

*The Demurrers*

Anaya did not respond to the complaint. Thus, at United's request, the court clerk entered default against Anaya.

The Zaracotases filed an answer generally denying the allegations of the complaint. They also asserted several affirmative defenses in their answer, two of which are pertinent to this appeal.

The first relevant defense was labeled "Fraud–Reformation of the Policy" (hereafter, the fraud defense). In connection with the fraud defense, the Zaracotases alleged that Anaya told Corrine Zaracotas he had "a million-dollar insurance policy in place." They alleged he also gave them a certificate of liability insurance from United showing the policy had a coverage limit of $1,000,000 per occurrence.[2] The certificate of liability insurance—which

---

[2]    A certificate of insurance is "evidence that a policy has been issued; it identifies the types of policies issued, the dates of coverage and the dollar limits of coverage." (*Travelers Property Casualty Co. of Am. v. Superior Court* (2013) 215 Cal.App.4th 561, 582.)

4

they attached as an exhibit to the answer—identified United as the insurer, Camelot as the insured, Builders Direct Insurance Services (Builders Direct) as the insurance producer,[3] and an individual named Agustin Jasso, Jr. as Anaya's policy contact.

According to the Zaracotases, Anaya's statement to Corrine Zaracotas and the certificate of liability insurance were both misleading because they did not disclose the heating device exclusion. The Zaracotases alleged United and Builders Direct intended, or had reason to know, that the misleading statements would be conveyed to them. They also alleged they relied on these supposed misstatements by hiring Camelot to perform the roof repairs. Based on this alleged fraud, the Zaracotases asked the court to "reform [United's] policy consistent with the terms contained" in the certificate of liability insurance.

The Zaracotases also asserted an equitable estoppel affirmative defense (hereafter, the equitable estoppel defense). For this defense, the Zaracotases incorporated the allegations underlying the fraud defense and requested that United "be estopped from asserting that its limit of liability under [the] policy … is fifty-thousand dollars ($50,000) …."

---

[3] A producer refers to a person or entity who solicits, sells, or negotiates insurance contracts. (Croskey, et al, Cal. Prac. Guide Insurance Litigation (The Rutter Group 2021) § 2:1.) There are two broad classifications of producers: insurance agents and insurance brokers. (*Ibid.*) "Insurance agents generally act on behalf of the insurer [citation]. An agent's primary duty is to represent the insurer in transactions with insurance applicants and policyholders. (*Id.*, § 2:1.1, p. 2-1.) "Insurance brokers generally act on behalf of the applicant for insurance (or, after insurance is purchased, the policyholder) …. A broker's primary duty is to represent the applicant/insured, and his or her actions are not generally binding on the insurer." (*Id.*, § 2:1.6, p. 2-2.)

5

United demurred to the fraud and equitable estoppel defenses. The trial court sustained the demurrer and granted the Zaracotases leave to amend their answer.

The court sustained the demurrer to the fraud defense on two grounds. First, it reasoned the Zaracotases could not seek reformation of the insurance policy because they were not parties to the policy and were not alleged to be third-party beneficiaries of the policy. Second, the court found there were no allegations "supporting the theory that [United] made its own misrepresentations with the intent to defraud the class of persons that includes" the Zaracotases, nor were there sufficient allegations of an agency relationship between United and Builders Direct.

The court sustained the demurrer to the equitable estoppel defense for two reasons as well. First, similar to its ruling on the fraud defense, the court found there were no allegations that United made misrepresentations to a class of persons encompassing the Zaracotases, and there were insufficient allegations of an agency relationship between United and Builders Direct. Second, the court determined "[t]he affirmative defense of estoppel cannot be used to create coverage where coverage would not otherwise exist." In reaching this finding, the court noted that portions of Zaracotases' answer "appear[ed] to acknowledge that the policy, as written, does not provide coverage for the underlying claim."

The Zaracotases filed an amended answer generally denying the allegations of the complaint and asserting modified versions of their affirmative defenses. The fraud defense, which previously was labeled "Fraud–Reformation of the Policy," was relabeled "Conspiracy to Defraud." The equitable estoppel defense was not relabeled.

6

For the newly-relabeled fraud defense, the Zaracotases repeated their prior allegations of fraud and added several new allegations. The Zaracotases alleged an entity called Safe Built Insurance Services Inc. dba Structural Insurance Services (Structural) was the "managing agent of [United] placed in charge of its sales program of its general liability policies and other insurance products." Structural allegedly entered into an agreement with Jasso dba Builders Direct to place United's business, deliver its policies, and collect premiums from its insureds. Jasso allegedly told Anaya that the policy had a "limit of one-million dollars for each accident," yet he did not disclose the heating device exclusion. He allegedly gave Anaya "several [United] policies and/or certificates of liability insurance" containing the same misleading statements, including the certificate of liability insurance that was later provided to the Zaracotases. The Zaracotases alleged United, Structural, and Jasso dba Builders Direct "concealed and conspired to conceal" the heating device exclusion from them. The Zaracotases asked for a declaration that United "ha[d] a duty to defend and indemnify" them—not merely the insured Camelot—for losses sustained as a result of the supposed fraud.

The equitable estoppel defense incorporated the fraud allegations and requested that United be estopped from asserting the $50,000 liability limit.

The amended answer contained a prayer for relief section as well. It sought a declaration that United had "a duty to defend and indemnify its insured [Camelot] *and the Zaracotas defendants* in the underlying action up to one million [sic] worth of insurance coverage ...." (Italics added.)

United once again demurred to the affirmative defenses and the court once again sustained the demurrer—this time without granting the Zaracotases leave to amend the answer.

The court sustained the demurrer to the fraud defense for two reasons. First, it determined the Zaracotases appeared to seek compensatory relief to the extent they requested a declaration that United had a duty to defend or indemnify them in the Underlying Action. According to the court, such a request was improper in an answer and must be made, if at all, in a cross-complaint. Second, the court concluded the Zaracotases, as a matter of law, could not allege they were owed a duty of defense or indemnity because they were merely incidental beneficiaries of the insurance policy. It reasoned the Zaracotases were not the named insureds under the policy and there were no allegations suggesting they were third-party beneficiaries of the policy.

The court also sustained the demurrer to the equitable estoppel defense for two reasons. First, it found the Zaracotases lacked standing as mere incidental beneficiaries to assert coverage under the policy. Second, it noted the answer still "appear[ed] to acknowledge that the policy, as written, does not provide coverage for the underlying claim." According to the court, "[t]he affirmative defense of estoppel cannot be used to create coverage where coverage would not otherwise exist."

D

*The Motion for Summary Adjudication*

A few months after the court sustained United's demurrer, United filed a motion for summary adjudication as to its first and second causes of action (which sought a declaration that United had no duty to defend or indemnify Camelot). United argued no duty to defend or indemnify arose because the insurance policy required Camelot, as a condition precedent to coverage, to pay a $5,000 self-insured retention to United. According to United, Camelot failed to pay the self-insured retention despite repeated requests that it do so. Together with the motion for summary adjudication, United filed a copy of its

8

general liability insurance policy and several letters that were sent to Camelot on behalf of United requesting payment of the self-insured retention.[4]

No defendant opposed the motion for summary adjudication.

The court granted summary adjudication for United and dismissed United's third cause of action in light of the summary adjudication ruling. It entered judgment in favor of United and declared that United had no duty to defend or indemnify Camelot in connection with the Underlying Litigation or any other consolidated or related actions arising out of the fire that gave rise to the Underlying Litigation.

## III

## DISCUSSION

The Zaracotases appeal the judgment and challenge the ruling sustaining the demurrer to their fraud and equitable estoppel defenses.

They contend the court erred in sustaining the demurrer to the fraud defense because they never sought compensatory relief in their amended answer and, in any event, the court had the power to grant them such relief despite their failure to file a cross-complaint against United. They assert the court erred by sustaining the demurrer to the equitable estoppel defense because they alleged the elements of equitable estoppel and the insurance policy at issue was procured through fraud. Finally, they argue the court erred in sustaining the demurrer to both defenses because they were third-

---

[4] " ' "Liability insurance policies often contain a 'deductible' or a 'self-insured retention' (SIR) requiring the insured to bear a portion of a loss otherwise covered by the policy." ' [Citation.] ' "The term 'retention' (or 'retained limit') refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied *before* there is any coverage under the policy. It is often referred to as a 'self-insured retention' or 'SIR.' " ' " (*Deere & Co. v. Allstate Ins. Co.* (2019) 32 Cal.App.5th 499, 505.)

party beneficiaries of the policy entitled to coverage under the policy as well as reformation of the policy.

It is unnecessary for us to assess the merits of these arguments because any asserted errors in the demurrer ruling were harmless. The California Constitution "generally 'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial.' " (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108, citing Cal. Const. art. VI, § 13.) It requires us " 'to affirm the judgment, notwithstanding error, if error has not resulted "in a miscarriage of justice." ' " (*F.P.*, at p. 1108; see also Code Civ. Proc., § 475 ["No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial"].) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

Here, the Zaracotases have not established a reasonable probability that they would have achieved a better outcome in the absence of the demurrer ruling. In short, it is highly likely the trial court would have granted United's unopposed motion for summary adjudication and entered judgment in United's favor based on Camelot's non-payment of the self-insured retention, even if the demurrer ruling was incorrect. Thus, any alleged error in the demurrer ruling does not warrant reversal. (See *Cohen v. Kabbalah Centre International, Inc.* (2019) 35 Cal.App.5th 13, 23 [any error in order sustaining demurrer to cause of action harmless where court correctly granted summary judgment on fraud claims similar to cause of

10

action dismissed on demurrer]; *Tanguilig v. Neiman Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 334 [declining to address merits of order sustaining demurrer to portions of complaint because complaint would have been dismissed for failure to bring it to trial within five years].)

In their reply brief, and in a supplemental brief filed at our request, the Zaracotases argue the demurrer ruling was prejudicial because they purportedly would have opposed the motion for summary adjudication if the demurrer had been overruled.[5] They claim that, in the absence of the demurrer ruling, they would have argued that the insurance policy was the product of fraud in the execution (sometimes known as fraud in the inception). They contend the court, presented with such an argument, would have found the entire policy—including the self-insured retention condition contained therein—void *ab initio*, such that it never had any legal effect. (See *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 958 ["when a plaintiff alleges fraud in the execution, the plaintiff is asserting that it was deceived as to the very nature of contract execution, and did not know what it was signing. A contract fraudulently induced is voidable; but a contract fraudulently executed is void, because there never was an agreement"].)

The Zaracotases' voidness argument is nonsensical. If the insurance policy between United and Camelot was void *ab initio*, United would seem to have no contractual duty to defend or indemnify Camelot (or any other person or entity) in connection with the Underlying Litigation for the simple

---

[5] We requested that the parties file supplemental briefs addressing whether the allegedly erroneous demurrer ruling was prejudicial, in light of the trial court's subsequent order granting United's motion for summary adjudication. We have reviewed and considered the parties' supplemental briefs on this issue.

reason that there was never an enforceable insurance policy in the first place. Stated differently, the claimed absence of an enforceable policy likely would have required the trial court to enter judgment in *United's* favor because United and Camelot never would have entered into a valid policy requiring United to defend or indemnify Camelot or any third-party beneficiary.

Moreover, the Zaracotases' own affirmative defenses seem to presume, and necessarily depend upon, the existence of an enforceable insurance policy. As part of the fraud defense, for example, the Zaracotases asked the court to reform the existing policy to reflect the contents of the certificate of insurance. However, no reformation of the existing policy would be possible if the policy was void *ab initio*. (See *Oatman v. Niemeyer* (1929) 207 Cal. 424, 426–427 ["If the contract itself is void … reformation is impossible, since there is no valid contract to reform."]; *McClure v. Cerati* (1948) 86 Cal.App.2d 74, 85 [" 'It is elementary that a void agreement has no standing in the law, and consequently it can neither be reformed nor enforced.' "].)

Further, the Zaracotases admit in their appellate briefs that the insurance policy was the product of mutual assent, thus giving rise to an enforceable agreement. For instance, they state in their opening appellate brief "there was an objective manifestation of mutual intent between the parties" to the policy. They also maintain that they are third-party beneficiaries of the policy—an argument that would make no sense if the policy was void *ab initio*. The Zaracotases' unambiguous admission that the policy was a manifestation of mutual assent between United and Camelot, as well as their argument that they were third-party beneficiaries, fatally undermine their claim that the policy was void *ab initio*.

For all these reasons, we conclude the Zaracotases have failed to demonstrate a reasonable probability that they would have obtained a more

12

favorable result if the demurrer ruling had gone their way.  Because they have not met their burden of establishing prejudice, the judgment must be affirmed.[6]

IV

DISPOSITION

The judgment is affirmed.  United is entitled to its costs on appeal.

McCONNELL, P. J.

WE CONCUR:

AARON, J.

IRION, J.

---

[6]    In light of our conclusion that the allegedly erroneous demurrer ruling was harmless, we deny United's motion to dismiss the appeal as moot.

13